Travis THOMSON, Appellant,

v.

Edwin K. NORTON, Jr. and Dallas
County State Bank, Appellees.

No. 20285.

Court of Civil Appeals of Texas,
Dallas.

Aug. 5, 1980.

John R. Henderson, John R. Brown, Meyers, Miller, Middleton & Weiner, Dallas, for appellant.

William L. Bedard, Storey, Armstrong, Steger & Martin, Charles T. Marshall, Akin, Gump, Hauer & Feld, Dallas, for appellees.

Before GUITTARD, C. J., and AKIN and STOREY, JJ.

GUITTARD, Chief Justice.

Travis Thomson sued Edwin Norton and Dallas County State Bank for fraud and nondisclosure in connection with a real estate transaction. The bank counterclaimed for a deficiency remaining after foreclosure. The trial court rendered summary judgment denying Thomson's claim against both defendants and awarding the bank recovery on its counterclaim. Thomson appeals on the grounds that the summary judgment proof is insufficient to negate as a matter of law plaintiff's claim of a confidential relationship raising a duty of disclosure and that the defense of limitation is not established as a matter of law. He also asserts that the trial court abused its discretion in overruling his motion for continuance. We hold that the evidence is sufficient to establish as a matter of law that no confidential relationship existed and that plaintiff has failed to show reversible error because he has not attacked all the grounds stated in the motion for summary judgment. We hold also that the judge did not abuse his discretion in overruling the motion for continuance. Consequently, we affirm.

## 1. Confidential Relationship

Since the defendants had the burden in their motions for summary judgment to negate as a matter of law the grounds of recovery stated in the plaintiff's petition, we take the following statements of facts from that petition. In late 1973, plaintiff sought financial advice from defendant Norton, an officer and director of the bank, concerning tax problems arising from an increase in his income. Norton recommended that plaintiff purchase real estate and arrange for prepayment of the interest in connection with the financing, and he advised plaintiff that he could arrange for him to purchase certain real estate. Based on plaintiff's trust and confidence in Norton, he entered into negotiations for the purchase of certain real estate with Norton, who "represented that he had authority to act on behalf of the owner of the property." As a result of these negotiations, plaintiff signed a contract of sale which Norton presented, but which did not show the name of the seller. Norton also arranged for a loan of the total purchase price from the bank, and the sale was closed on December

31, 1973. At the time of the closing, plaintiff signed a promissory note for $177,500, payable to the bank, secured by a deed of trust on the property. In December, 1975, when the note fell into default, the bank posted the property for foreclosure and the property was sold for an amount insufficient to satisfy the note. At the time of the foreclosure, plaintiff obtained copies of the closing documents from the title company and learned that he had purchased the property from Donna, Inc., at a purchase price of $5,709.23 per acre, and that on the same date Donna, Inc. had purchased the property for $5,226.76 per acre. Afterwards plaintiff learned that Donna, Inc. was controlled by Norton and that Norton had arranged for Donna, Inc. to sell the land to plaintiff for a profit of $482.47 per acre. Norton, individually and as an officer of the bank, failed to disclose to plaintiff certain material facts, namely, that Donna, Inc. was owned and controlled by Norton and that Norton intended to profit from the transaction by personally arranging for the purchase of the property by Donna, Inc., at a lower price than that at which Donna, Inc. had agreed to sell the property to plaintiff. At the time plaintiff entered into the contract of sale, Donna, Inc. did not have title to the property, and plaintiff could have purchased the property for $5,226.76 per acre. Norton knew or should have known that these undisclosed facts were material and, if disclosed to plaintiff, would have materially affected his decision to purchase the property and sign the note and deed of trust. At the time of the negotiations, plaintiff relied on Norton's expertise and did not conduct any independent investigation.

The petition prays for rescission of the purchase transaction and all documents and contracts entered into in connection with its financing, for judgment against Norton for the $177,500 received in connection with the purchase by plaintiff, for judgment against the bank for $18,479.45 received by the bank as interest on the loan, and for discharge of any deficiency claimed by the bank in connection with the foreclosure.

Defendant Norton excepted to the petition on the ground that its allegations failed as a matter of law to support any recovery based on any special relationship of trust and confidence. This exception was never presented for a ruling, so far as the record shows, and, therefore, was waived. Norton also pleaded a general denial and alleged that the claim was barred by the two–year statute of limitations. The bank's answer contains similar allegations and also a counterclaim for a deficiency of $53,517.10 remaining on the note after foreclosure. Defendants filed a motion for summary judgment on various grounds, including the ground that the claim was barred by limitation because the fraud is alleged to have occurred more than two years before the suit was filed and that the petition fails to allege a special relationship of trust and confidence supporting a cause of action based on alleged nondisclosure. The bank's motion also asserts that it is entitled as a matter of law to judgment for the deficiency.

Affidavits filed in support of the motion include an affidavit by Norton which contains the following averments. Before July 1973, Norton was barely acquainted with plaintiff and had no social relationship with him, their only dealings having been discussions concerning plaintiff's purchase of a house. About that time plaintiff approached him requesting that he endeavor to find plaintiff some land so that plaintiff could acquire a needed tax write–off for the year 1973. Norton, who was then chairman of the Board of the Dallas County State Bank, showed plaintiff the land in question and informed him that it was available for purchase, but he gave plaintiff no financial advice and plaintiff sought none, and this was the extent of their dealings. He heard nothing more from plaintiff until October or November. In the meantime, Donna, Inc., in which Norton was a stockholder, entered into a contract to purchase the land for $162,500, to be paid at the time of closing, no later than December 27, 1973. In October or November, plaintiff telephoned and told him that plaintiff was interested in purchasing the

land, but made no inquiry concerning its ownership. In December plaintiff entered into a contract to purchase the land from Donna, Inc. at a closing before the end of that month for a price of $177,500, which was loaned to him by the Dallas County State Bank. Norton was not present at the closing, when plaintiff signed the note and deed of trust in favor of the bank.

Plaintiff filed no counter affidavit and made no other written response to the motion. On appeal he contends, however, that the trial court erred in granting summary judgment because defendants' summary–judgment proof fails to establish that defendants were entitled to judgment as a matter of law in that it fails to negate the existence of a confidential relationship.

We conclude that Norton's affidavit, in the absence of any opposing summary–judgment evidence, is sufficient to negate the existence of a confidential relationship. He states categorically that he gave plaintiff no advice and plaintiff sought none, that he had no social relationship with him, and was only "barely acquainted" as the result of earlier circumstances concerning purchase of a house. Plaintiff's only request was to help him find some land that he could purchase for the purpose of a tax write–off. He showed plaintiff the land in question and later learned that plaintiff was interested in purchasing it. Since Norton says nothing about any further negotiations with plaintiff, we accept the allegations in the petition that all negotiations for the sale took place between plaintiff and Norton, who represented "that he had the authority to act on behalf of the owner of the property," and that Norton arranged a loan from the bank for the amount of the purchase price.

In plaintiff's brief the only facts suggested as indicating a confidential relationship are that plaintiff and Norton had previously known one another, that appellant asked Norton to watch for a good real estate deal which could be structured for a tax write–off in 1973, that Norton was the chairman of the board of the bank, and that Norton showed the real estate to him.

These facts, though admitted, raise no inference contrary to Norton's affidavit, which, if not true, could easily have been controverted. Norton states that his previous acquaintance with plaintiff was slight and that no advice was given or sought. According to the petition, plaintiff did not regard Norton as his own agent, but as a person with "authority to act on behalf of the owner." The fact that Norton was an officer of the bank which made a loan of the amount of the purchase price does not raise a confidential relationship. *Winston v. Lake Jackson Bank*, 574 S.W.2d 628 (Tex. Civ.App.–Houston [14th Dist.] 1978, no writ).

Even if we assume the truth of plaintiff's allegation that he entered into negotiations for purchase of the property based on his trust and confidence in Norton, that fact would not establish a confidential relationship raising a duty of disclosure. Subjective trust alone is not enough to transform arms–length dealing into a fiduciary relationship. Most contracting parties have some degree of trust and confidence in each other, or they would not make a deal. *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). Although a confidential relationship may be shown outside the usual case of a partnership, attorney–and–client, or family relationship, the evidence must show that dealings between the parties have continued for such a period of time that one party is justified in relying on the other to act in his best interest. *Consolidated Gas & Equipment Co. v. Thompson*, 405 S.W.2d 333, 334–35 (Tex.1966). The summary–judgment proof establishes as a matter of law that no such relationship existed in this case. Consequently, the summary judgment was proper.

### 2. Other Grounds of Summary Judgment

Moreover, plaintiff has failed to show error in granting the motion for summary judgment, since the judgment does not state the ground on which it was granted and plaintiff's brief on appeal does not attack all the grounds stated in the motion. Plaintiff's third point asserts that there is

insufficient evidence to support the court's finding that defendants were entitled to judgment as a matter of law. Under this point he contends that the summary–judgment proof is insufficient to negate a confidential relationship and also that the evidence fails to establish the defense of limitation because it fails to show when plaintiff discovered the fraud or could have discovered the fraud in the exercise of reasonable diligence. He does not, however, attack any of several other independent grounds asserted in the motion. We have no duty to examine and research these grounds without the assistance of counsel so as to determine whether any of them are supported by the record and by applicable rules of law. Consequently, regardless of the question of confidential relationship, we hold that no reversible error is shown. *Rodriguez v. Morgan*, 584 S.W.2d 558, 559 (Tex.Civ.App.–Austin 1979, writ ref'd n. r. e.); *Guion v. Guion*, 475 S.W.2d 865, 869 (Tex.Civ.App.–Dallas 1971), writ ref'd n. r. e.); see *Malooly Bros., Inc.· v. Napier*, 461 S.W.2d 119, 121 (Tex.1970).

### 3. Denial of Continuance

Plaintiff also contends that even if the evidence in the present record is sufficient, in the absence of any response to the motion for summary judgment, the trial judge abused his discretion in denying plaintiff's motion for continuance based on insufficient time allowed to his counsel, who had been recently employed, to become familiar with the law and the facts of the case and to prepare a proper response to the motion. He asserts that this lack of preparation was not due to any negligence on his part or on the part of his attorney and that he was denied due process of law because he was deprived of the effective assistance of counsel.

The motion for continuance, which is sworn to by plaintiff's new counsel, Leonard Hoffman, III, states the following facts. Plaintiff had previously been represented by an attorney who had recently received an appointment requiring him to withdraw from active trial practice. The former counsel had requested Mr. Hoffman to take over the representation of plaintiff, but Mr. Hoffman had not received the file until very recently, had no familiarity with the case and was not ready to proceed with the motions for summary judgment. Mr. Hoffman learned for the first time on July 11, 1979, that a hearing on the motions for summary judgment was set for July 13, He had no opportunity to prepare for the hearing and no opportunity to reply to the motion and could not safely proceed with the hearing on that date.

We conclude that the trial judge did not abuse his discretion in overruling the motion for continuance in the light of the record in this case. Although Mr. Hoffman personally may have been diligent, the record does not show diligence on the part of plaintiff's former counsel. Mr. Hoffman is the third lawyer who has undertaken to represent plaintiff in this case. The suit was filed October 7, 1976. The motions for summary judgment and supporting affidavits were filed December 27; 1977. On January 3, 1978, plaintiff's original counsel was permitted to withdraw, the motions for summary judgment were set for hearing on January 20, 1978, and trial on the merits was set for January 23. These settings were passed and on January 26, 1978, a second lawyer was substituted as counsel for plaintiff. The trial was reset for August 7, 1978, but the case was continued on the joint motion of all counsel, filed July 18, 1978, stating that plaintiff's second counsel would no longer be handling contested lawsuits because he had recently received an appointment and that arrangements were pending for replacing him. In response to this motion the case was continued to March 19, 1979. On March 5, 1979, another continuance was granted to June 18, 1979. A third continuance was subsequently granted setting the trial on the merits for December 10, 1979, and setting the hearing on the motions for summary judgment on July 13. On July 3, 1979, the second counsel for plaintiff wrote a letter to opposing counsel and the clerk of the court, enclosing a substitution of counsel signed by himself and Mr. Hoffman and acknowledging the setting of the motions on July 13.

These circumstances, in our opinion, support the court's denial of another continuance. Although plaintiff had been represented by three different attorneys, he was never without counsel. The motions for summary judgment were filed more than eighteen months before they were heard. The inability of his second counsel to represent him actively in court had been known to all parties almost two years, during which arrangements were pending to place him. Yet no arrangements were made, no discovery was undertaken, and no response to the motions was filed.

■ These facts are sufficient to justify the trial court in finding a lack of reasonable diligence in prosecuting the suit. The rule is well settled that a party cannot excuse failure to use diligence in the conduct of litigation by asserting reliance on his own counsel because he is responsible for his counsel's actions. *Gracey v. West*, 422 S.W.2d 913, 916 (Tex.1968); *Texas Employers Ins. Ass'n v. Wermske*, 162 Tex. 540, 349 S.W.2d 90, 93 (1961). Certainly, if the new counsel had not been substituted and the motion had been filed by the second counsel, the latter could not have shown the diligence required for a mandatory continuance. By delaying the substitution until one week before the hearing, and then failing to advise new counsel of the date set for hearing of the motions, withdrawing counsel could not create a ground for continuance that did not otherwise exist. In this connection, it should be noted that so far as this record shows, the court never granted leave to withdraw and no motion to withdraw was filed. Consequently, the court was at liberty to treat the case as if counsel had not withdrawn, so far as concerned preparation for the summary–judgment hearing on July 13.

■ Moreover, the motion for continuance contains no suggestion of what evidence might be available to defeat the motions. Under the circumstances, plaintiff should have made some sort of showing to the court that he had a reasonable expectation of obtaining evidence that would defeat the motion. The facts of the case as alleged in the petition are not complex. If circumstances existed raising an issue of confidential relationship, those facts were presumably within plaintiff's personal knowledge and could have been supplied to the court by his affidavit. The motion for continuance gives no indication that plaintiff was not available to give such an affidavit, but shows rather that the new counsel had communicated directly with him. The judge could reasonably have concluded that counsel had at least enough time to read the pleadings and the motions and obtain an affidavit from his own client. Consequently, we hold that he did not abuse his discretion in denying the continuance. *McAx Sign Co., Inc. v. Royal Coach, Inc.*, 547 S.W.2d 368, 370 (Tex.Civ.App.–Dallas 1977, no writ); *Smith v. Huntsville Independent School District*, 425 S.W.2d 369, 371 (Tex.Civ.App.–Houston [14th Dist.] 1968, no writ).

■ Plaintiff contends that denial of the continuance was an abuse of discretion under *Stefanov v. Ceips*, 395 S.W.2d 663 (Tex.Civ.App.–Amarillo 1965, no writ). That opinion was based on entirely different facts. In that case the appellant's attorney was permitted to withdraw on the morning of the trial, although appellant objected and advised the court that he wanted the attorney to represent him. The appellate court held that the court should have continued the case since "appellant through no fault or neglect on his part except in failing to make a motion for continuance was deprived of having an attorney of his own selection to appear and represent him." The decision does not stand for the rule that a party is not responsible for his counsel's lack of diligence. In that case, the trial court's error was in permitting the attorney to withdraw on the morning of the trial. Here there was no formal withdrawal, only a substitution of counsel ten days before the hearing, and the judge could properly consider the entire record of the case in exercising his discretion.

Affirmed.