BLUE BELL, INC., Appellant,

v.

PEAT, MARWICK, MITCHELL & CO., Appellee.

No. 05–85–00520–CV.

Court of Appeals of Texas, Dallas.

July 24, 1986.

Rehearing Denied July 24, 1986.

R. Jack Ayers, Jr., Thomas V. Murto, III, Jeff R. Boggess, Law Offices of Jack Ayers, Jr., P.C., Dallas, for appellant.

Morris Harrell, Robb L. Voyles, Rain, Harrell, Emery, Young & Doke, Dallas (Anthony J. Costantini, Peat, Marwick, Mitchell & Co., New York City, of counsel), for appellee.

Before AKIN, STEWART * and CARVER,**, JJ.

* The Honorable Annette Stewart replaced the Honorable James Zimmerman who sat on original submission but resigned before this opinion on motion for rehearing issued.

** The Honorable Spencer Carver, Justice, retired, Fifth District of Texas at Dallas, sitting by assignment.

ON MOTION FOR REHEARING

AKIN, Justice.

Our original opinion in this cause, dated March 6, 1986, is withdrawn, and this opinion is substituted therefor. Blue Bell, Inc., appeals from a summary judgment granted in favor of Peat, Marwick, Mitchell, & Co. ("PMM"). Blue Bell had sued PMM, alleging four causes of action: negligent misrepresentation; fraud; breach of warranty; and breach of fiduciary duty. PMM moved for summary judgment, and its motion was granted by the trial court. On appeal, Blue Bell contends that the trial court erred in granting summary judgment as to each of its causes of action. We agree that the trial court erred in granting summary judgment as to Blue Bell's negligent misrepresentation cause of action and, accordingly, reverse and remand this cause for trial on the merits. We affirm the trial court's judgment as to Blue Bell's other causes of action.

In 1972 Blue Bell, a clothing manufacturer located in North Carolina, established an account for and began extending credit to Myers Department Stores, Inc., a Texas corporation based in Arlington, Texas ("Myers (Texas)"). Blue Bell and Myers (Texas) apparently enjoyed a satisfactory business relationship. In 1980 Myers (Texas) and an affiliated company, Myers Department Stores of Fort Worth, Inc. ("Myers (Fort Worth)"), were acquired by a newly-formed Delaware corporation, Myers Department Stores, Inc. ("Myers (Delaware)"). The Myers entities will be collectively referred to as "Myers."

Shortly after the acquisition, PMM was engaged by Myers (Delaware) to audit the financial records of Myers (Delaware) and its subsidiary corporations, Myers (Texas) and Myers (Fort Worth), as of and for the fiscal year ended February 1, 1981. PMM audited two sets of financial statements. On April 24, 1981, PMM completed the field work on its audit examination of the combined financial statements[1] of Myers (Texas) and Myers (Fort Worth). On May 29, 1981, PMM completed the field work on its audit examination of the consolidated balance sheet[2] of Myers (Delaware) and its subsidiaries, Myers (Texas) and Myers (Fort Worth). On June 3, 1981, PMM forwarded to Myers the consolidated balance sheet, the combined financial statements, and accountants' reports on both statements. Several days later PMM made a minor revision in the combined financial statements and, at Myers' request, provided seventy copies of the revised statements to replace the twenty-five copies of the original statements.

Myers furnished the original and revised combined financial statements, and the accompanying accountants' report, to Blue Bell. Blue Bell allegedly relied upon these documents in extending substantial amounts of credit to Myers (Texas). These extensions of credit continued until July 23, 1982. On November 4, 1982, Myers filed for bankruptcy. Blue Bell recovered through bankruptcy proceedings only a portion of the balance due on its account with Myers (Texas). Consequently, Blue Bell filed suit against PMM.

*1. Negligent Misrepresentation*

Blue Bell contends that the trial court erred in granting summary judgment for PMM on Blue Bell's cause of action for negligent misrepresentation. PMM moved for summary judgment as to this cause of action on the ground that the summary judgment evidence conclusively established the absence of the following elements of the cause of action: (1) that PMM owed a legal duty to Blue Bell; (2) that Blue Bell was a member of a limited group of persons PMM intended to, or knew that Myers intended to, supply with information prepared by PMM, and that Blue Bell relied on that information in a transaction which PMM intended or knew that Myers intended, the information to influence; (3) that

---

1. A combined financial statement is the combination of the financial statements of two or more companies with common ownership.

2. A consolidated financial statement is the consolidation of the financial statements of a parent company and one or more subsidiaries.

PMM provided false information; (4) that PMM failed to exercise reasonable care; and (5) that Blue Bell's reliance was justified. Further, PMM asserted that the summary judgment evidence conclusively established that Blue Bell had been contributorily negligent and that Blue Bell's negligence was the sole proximate cause of its damages.

If the summary judgment evidence conclusively establishes the absence of even one of the elements of Blue Bell's cause of action, we must affirm the trial court's judgment. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). In deciding whether the trial court properly granted summary judgment, evidence favorable to the non-movant must be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts must be resolved in the non-movant's favor. *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589, 592–93 (Tex.1975). We hold that PMM has failed to establish, as a matter of law, that no genuine issue of fact existed as to each of the above elements of Blue Bell's cause of action and that, consequently, the trial court erred in granting summary judgment.

We consider first Blue Bell's contention that PMM failed to conclusively establish that it owed no legal duty to Blue Bell. In response, PMM argues that as a matter of law it owed no legal duty to Blue Bell because there was no privity of contract between them. We disagree with PMM. This contention was decided against PMM's position in *Shatterproof Glass Corp. v. James*, 466 S.W.2d 873 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.). There the court expressly held that, within the scope defined by section 552 of the Restatement (Second) of Torts,

> an accountant may be held liable to third parties who rely upon financial statements, audits, etc., prepared by the accountant in cases where the latter fails to exercise ordinary care in the preparation of such statements, audits, etc., and

the third party because of such reliance suffers financial loss or damages.

*Id.* at 880. Section 552 of the Restatement provides, in pertinent part:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered:
>
> (a) by the person *or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it;* and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

RESTATEMENT (SECOND) OF TORTS § 552 (1977) (emphasis added).

Initially, we note that, although the court in *Shatterproof Glass* relied upon adoption of the quoted section of the Restatement, it also quoted extensively from one commentator who advocates even broader liability than that set forth in Section 552. *See* Comment: *"Auditors' Responsibility for Misrepresentation: Inadequate Protection for Users of Financial Statements,"* 44 Washington Law Rev. 139 (1968). In this comment, the author supports liability of an auditor to all those whom he should reasonably expect to rely on his certification of financial statements. *Id.* at 191–92. Many other law-review writers have also advocated that the test for the scope of an accountant's liability should extend beyond that propounded by the Restatement to include all relying third parties who were reasonably foreseeable to the accountant at the time he made his report. *See, e.g.,*

Comment, *The Citadel Falls?—Liability for Accountants in Negligence to Third Parties Absent Privity: Credit Alliance Corp. v. Arthur Anderson & Co.*, 59 St. John's L.Rev. 348 (1985); Pace, *Negligent Misrepresentation and the Certified Public Accountant: An Overview of Common Law Liability to Third Parties*, 18 Suffolk U.L.Rev. 431 (1984); Wiener, *Common Law Liability of the Certified Public Accountant for Negligent Misrepresentation*, 20 San Diego L.Rev. 233 (1983); Septimus, *Accountant's Liability for Negligence—A Contemporary Approach for a Modern Profession*, 48 Fordham L.Rev. 401 (1979); Miller, *Public Accountants and Attorneys, Negligence and the Third Party*, 47 Notre Dame Law. 588 (1972); Marinelli, Jr., *The Expanding Scope of Accountant's Liability to Third Parties*, 23 Case W.Res. 113 (1971); Comment, *Auditor's Responsibility*, 44 Wash.L.Rev. 139 (1968); Note, *Potential Liability of Accountants to Third Parties for Negligence*, 41 St. John's L.Rev. 588 (1967); *Accounting Uniformity*, 30 Law & Contemp. Probs. 898 (1965). Furthermore, three jurisdictions have recently adopted foreseeability as the test for liability of accountants for negligence to third parties. *International Mortgage Co. v. John P. Butler Accountancy Corp.*, 177 Cal.App.3d 806, 223 Cal.Rptr. 218 (4th Dist.1986); *Citizens State Bank v. Timm, Schmidt & Co.*, 13 Wis.2d 376, 335 N.W.2d 361 (1983); *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 461 A.2d 138 (1983). Although we find the reasoning of the cases and commentators urging adoption of the foreseeability test persuasive, we need not decide whether that test should be adopted in this case.[3]

■ Instead, we look to section 552 of the Restatement (Second) and decide that, as we construe this section, a fact issue exists as to whether Blue Bell falls within the "limited class" as used in that section. Although we need not go so far today as to adopt the broad standard of foreseeability advocated by some of the commentators, we conclude that the apparent attempt in comment h. under this section to limit the class of third parties who may recover to those actually and specifically known by the defendant is too artificial a distinction. *See* Note, *Accountant's Liability for Compilation and Review Engagements*, 60 Tex.L.R. 759, 776 n. 90, 814 n. 299 (1982); Comment, *The Citadel Falls*, 59 St. John's Law Rev. at 358–361; Pace, *Negligent Misrepresentation*, 18 Suffolk Law Rev. at 445–446; Wiener, *Common Law Liability*, 20 San Diego Law Rev. at 252; Miller, *Public Accountants*, 47 Notre Dame Law, at 606–607; Besser, *Privity?—An Obsolete Approach to the Liability of Accountants to Third Parties*, 7 Seton Hall Law Rev. 507, 527–528 (1976). Consequently, we adopt a less restrictive interpretation of section 552 than would be indicated by the comments thereunder, particularly Comment h., illustration 10. To allow liability to turn on the fortuitous occurrence that the accountant's client specifically mentions a person or class of persons who are to receive the reports, when the accountant may have that same knowledge as a matter of business practice, is too tenuous a distinction for us to adopt as a rule of law. Instead, we hold that if, under current business practices and the circumstances of that case, an accountant preparing audited financial statements knows *or should know* that such statements will be relied upon by a limited class of persons, the accountant may be liable for injuries to members of that class relying on his certification of the audited reports. *See Note, Accountant's Liability*, 60 Tex.Law Rev. at 776 n. 90.

---

**3.** We note, however, that in the recent case of *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) we applied section 552 of the Restatement (Second) of Torts (1977) to extend liability of a surveyor to the "person or class of persons whom the maker of the representation intends to benefit *or who foreseeably may be expected to rely* on the infor-

mation." [Emphasis added.] We do not here decide whether the same scope of liability to third persons should apply to accountants, although we doubt the wisdom of distinguishing among various professionals in determining their scope of liability for negligent misrepresentation.

Among the factors relevant to this issue is the fact that Blue Bell was a trade creditor of Myers at the time PMM prepared the financial statements in question and that PMM was, therefore, aware of Blue Bell as one of a limited number of existing trade creditors who would, in all probability, be receiving copies of the financial statements. Furthermore, PMM supplied Myers with seventy copies of the financial statements, indicating knowledge by PMM that third parties would be given the reports. We hold that a current trade creditor is one of a limited class of people contemplated by the language in the Restatement. Consequently, in deciding whether PMM "had a duty to Blue Bell," a fact finder must determine whether PMM knew or should have known that members of such a limited class would receive copies of the audited financial statements it prepared.

■ Finally, our decision in this case is not directly in conflict with *First Municipal Leasing Corp. v. Blankenship, Potts, Aikman, Hagin and Stewart*, 648 S.W.2d 410, 413 (Tex.Civ.App.—Dallas 1983, writ ref'd n.r.e.) in which we failed to apply section 552 of the Restatement (Second) to an attorney who issued an opinion letter to a client knowing that a specific third party would rely thereon. We limited our decision in that opinion, because of prior Texas cases on the issue, to a determination of *attorney* liability to third parties. This court has subsequently relied upon section 552 of the Restatement (Second) in the case of *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231, 234–35 (Tex.App.—Dallas 1985, writ ref'd n.r.e.), which determined liability of a surveyor to a third party. We doubt the wisdom of continuing to apply different standards for determining the liability of different professionals to third parties, but conclude that we need not eliminate these distinctions in this case. We limit, therefore, our holding to apply section 552 of the Restatement to accountant liability to third parties whom the accountant intends to receive the information, or whom the accountant knows, or should know, will re-

ceive the information, or parties who are members of such a class of persons.

■ Next, Blue Bell contends that PMM failed to establish as a matter of law that it did not provide false information. PMM takes the contrary position, arguing that the summary judgment evidence conclusively showed that the data on the combined financial statements was accurate and that neither the combined financial statements nor the accompanying accountants' report contained any misrepresentations. We agree with Blue Bell.

The accountants' report contained the following statement:

In our opinion, the aforementioned 1981 combined financial statements present fairly the combined financial position of Myers Department Stores, Inc. (a Texas corporation) and affiliated company as of February 1, 1981 and the combined results of their operations and the changes in their financial position for the year then ended, in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceding year.

Blue Bell argues that the combined financial statements *alone* did not "present fairly" an accurate picture of the financial situation of Myers (Texas) and Myers (Fort Worth) and that, in order to obtain the true picture, reference to the consolidated balance sheet was necessary. PMM maintains that the combined statements and the attached notes (which Blue Bell received together with the combined statements) did present fairly the financial situation of Myers (Texas) and Myers (Fort Worth). In this respect, PMM points out that the notes stated that "[s]ubstantially all of the assets and the common stock issued of [Myers (Texas) and Myers (Fort Worth)] are pledged to secure indebtedness of [Myers (Delaware)]." We note that there is summary judgment evidence in the record from Bernard Augen, Blue Bell's expert, that the combined statements were misleading and that the "consolidated financial statement was necessary for a fair presentation" of the true financial situation of

Myers (Texas) and Myers (Fort Worth).[4] Furthermore, with respect to the note concerning the pledge of the subsidiaries' assets to secure the parent's indebtedness, Augen testified that despite this note the combined statements are misleading because they give a reader no way of knowing:

(a) that the parent company had no assets other than its investment in subsidiaries, (b) that the parent company had a debt of $2,900,000, of which $1,385,417 was due within one year and could only be paid from funds generated from the subsidiaries or from additional borrowings, and (c) that interest payments on the above debt would have to be paid from funds generated from the subsidiaries, (d) that the equity of the consolidated group was approximately $2,500,000 less than that shown in the subsidiaries' balance sheet even though there were assets other than the subsidiaries, and (e) that rather than operating at a profit of approximately $545,000 as shown on the statement, the stores were probably operating at a loss after interest, amortization of leasehold costs and other expenses that were booked on the parent. Without disclosure of this information, a reader had a right to assume that the combined financial statement fairly presented the financial position and results of operation for the Myers Department Stores.

Accordingly, we hold that PMM failed to negate a fact issue concerning whether PMM provided false or misleading information.

■ Next, Blue Bell contends that PMM did not conclusively establish that PMM exercised reasonable care in the preparation of the combined financial statements. We agree with this contention. Bernard Augen stated in his affidavit that the combined financial statements "did not appear to have been prepared in accordance with generally accepted accounting principles" and provided an example supporting his conclusion. Because we must take evidence favorable to the non-movant, Blue Bell, as true, *Wilcox,* 531 S.W.2d at 593, we conclude that a fact issue was raised as to whether PMM exercised reasonable care in preparing the combined financial statements.

■ Lastly, with respect to its negligent misrepresentation cause of action, Blue Bell contends that PMM failed to establish as a matter of law that Blue Bell's reliance on the combined financial statements and the accompanying accountants' report was not justified or that Blue Bell had been contributorily negligent in so relying and that such alleged negligence was the sole proximate cause of Blue Bell's damages. We agree that a fact issue has been raised regarding these questions by the deposition testimony of Joe Abston, the PMM partner in charge of the Myers' audit.

Blue Bell's attorney propounded a hypothetical question concerning circumstances set forth in Blue Bell's pleadings or substantially established by summary judgment evidence. He then asked Abston whether, based on those circumstances, Abston would want to use the combined financial statements or the consolidated financial statements in making a determination of whether to extend credit of up to one-half million dollars to the subsidiary. Abston replied:

I don't know what financial statement, you know, what financial information has been regularly given to this supplier, or whatever, but, you know, *maybe if it's been a good customer over the years and the credit record is right, you'd make a decision based on either one of these financial statements* [emphasis added.]

---

**4.** Of course, a failure to report material information can be a misrepresentation. *See Southeastern Financial Corp. v. United Merchants and Manufacturers, Inc.,* 701 F.2d 565, 566–67 (5th Cir.1983) (applying Texas law); *International Security Life Insurance Co. v. Finck,* 475 S.W.2d 363, 370 (Tex.Civ.App.—Amarillo 1971), *aff'd in part, rev'd in part on other grounds,* 496 S.W.2d 544 (Tex.1973); *Chandler v. Butler,* 284 S.W.2d 388, 395 (Tex.Civ.App.—Texarkana 1955, no writ).

In view of this testimony, we hold that PMM failed to negate a fact issue as to whether Blue Bell's reliance on the combined financial statements was justified and, consequently, whether Blue Bell was contributorily negligent in so relying.

Since PMM has failed to negate fact issues with respect to each element of Blue Bell's negligent misrepresentation cause of action, we hold that the trial court erred in granting summary judgment as to this cause of action.

### 2. Fraud

■ Blue Bell contends that the trial court erred in granting summary judgment for PMM on Blue Bell's cause of action for fraud. We disagree. The elements of actionable fraud are: (1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that the speaker made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that the party thereby suffered injury. *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 185 (Tex.1977); *J.L. Williams & Co., Inc. v. Robert E. McKee, Inc.*, 612 S.W.2d 649, 651 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). We hold that the summary judgment evidence conclusively established that PMM did not make the representation at issue with the intention that it should be acted upon by Blue Bell. Accordingly, we hold that the trial court did not err in granting summary judgment as to Blue Bell's cause of action for fraud.

We have held that an accountant is liable for misrepresentations negligently made by him to another party which are relied upon by a third party who belongs to a limited class of person which is known or should be known to the accountant. Blue Bell

would have us hold that, if it was known or should have been known by PMM that Blue Bell would rely upon the combined financial statements and the accompanying accountants' report in extending credit to Myers (Texas), those representations were made with the intent that they be acted upon by Blue Bell. This we decline to do.

■ The mere fact that it *should be* known that another will rely upon a misrepresentation does not, of itself, establish that the misrepresentation was made with the *intent* to induce reliance. The "intent" element of a fraud action imports a significantly greater degree of purposeful conduct than does the "foreseeability" element of a negligence action.[5] Apart from its argument that "foreseeability" of reliance establishes the requisite intent, Blue Bell adduced no summary judgment evidence tending to show that PMM intended to induce Blue Bell's reliance on PMM's representations. Accordingly, there was no genuine issue of fact raised as to this element of Blue Bell's cause of action for fraud.

### 3. Breach of Warranty

■ Blue Bell contends that the trial court erred in granting summary judgment on its cause of action for breach of warranty. We do not agree. Blue Bell points to the following statement by PMM in its report accompanying the combined financial statements:

> Our examination was made in accordance with generally accepted auditing standards, and accordingly included such tests of the accounting records and such other auditing procedures as we considered necessary in the circumstances.

Blue Bell maintains that this representation is tantamount to an express warranty to the general public that PMM's work product was made in accordance with gen-

---

5. We recognize that, in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931) Chief Judge Cardozo, writing for a unanimous court, apparently relaxed the "intent" element of fraud to allow recovery by persons unknown to the defendant and whom it was not his primary purpose to defraud. Given our holding on the

negligent misrepresentation cause of action, we do not find applicable the usual policy reasons for extending the limits of fraud. *See* Hawkins, *Professional Negligence Liability of Public Accountants*, 12 Vand.L.Rev. 797, 815–818 (1959); Seavey, *Mr. Justice Cardozo and the Law of Torts*, 52 Harv.L.Rev. 372, 404 (1939).

erally accepted auditing standards. Blue Bell cites no Texas authority supporting this proposition, and our research has disclosed none. Blue Bell argues, however, that we should follow "the national trend of authorities" recognizing a cause of action, based on strict liability principles, for breach of this alleged "warranty." We decline to accept Blue Bell's invitation to so extend Texas warranty law. We note with approval the opinion of one commentator concerning the question of imposing strict liability on accountants:

> [S]trict liability is unsuited to the accounting field. The accountant's function is not to guarantee accuracy, but to render an opinion on the fairness of a financial report compiled by his client. The sheer volume of raw data precludes an exhaustive review and forces the accountant to base his opinion on a testing and sampling process. Systemic flaws are conspicuous, but isolated errors may escape notice. In addition, the wide variety of accepted accounting principles allows the client to bias his financial report within prescribed limits of accuracy. Possibilities of intentional deception further complicate the strict liability approach. Making accountants liable regardless of care would create professional scapegoats for fraudulent and judgment-proof clients.

Note, *Torts—Professional Negligence—Accountants May Be Liable To Third Parties For Negligence*, 50 Tex.L.Rev. 411, 418 (1972) (footnotes omitted). Accordingly, we hold that the trial court did not err in rendering summary judgment as to Blue Bell's cause of action for breach of warranty.

### 4. Breach of Fiduciary Duty

Blue Bell contends that the trial court erred in granting summary judgment as to its cause of action for breach of fiduciary duties. We disagree. A fiduciary duty owed by one person to another extends only to dealings within the scope of the fiduciary relationship between the parties. *Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex.1977); *Fuqua v. Taylor*, 683 S.W.2d 735, 738 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). The usual fiduciary relationships are those such as between attorney and client, partners, joint venturers, and close family members such as parent and child. *Consolidated Gas & Equipment Co. v. Thompson*, 405 S.W.2d 333, 336–37 (Tex.1966). A fiduciary relationship may arise outside these usual situations where the dealings between the parties have continued for such a period of time that one party is justified in relying on the other to act in his best interest. *Thomson v. Norton*, 604 S.W.2d 473, 476 (Tex.Civ.App.—Dallas 1980, no writ). Mere subjective trust, however, is not enough to transform arms-length dealing into a fiduciary relationship. *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1963).

In the instant case, the summary judgment evidence establishes the absence of a fact issue as to the existence of a fiduciary relationship between Blue Bell and PMM. Indeed, the summary judgment evidence established that no relationship at all existed between them. Consequently, we hold that the trial court did not err in granting summary judgment as to Blue Bell's cause of action for breach of fiduciary duties.

Affirmed in part, reversed and remanded in part. Appellee's and appellant's motions for rehearing are overruled.