COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
ABRAMS CENTRE NATIONAL BANK,         ) 
a National Banking Association,                      )                  No. 08-05-00140-CV
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  298th District Court
)
FARMER, FUQUA & HUFF, P.C., f/k/a           )                  of Dallas County, Texas
Farmer, Fuqua, Hunt & Munselle, P.C., a           )
Texas Professional Corporation,                          )                  (TC# 02-01573)
)
                                    Appellee.                          )

O P I N I O N

            We address today the liability of an accounting firm for negligent misrepresentation in audit
reports. The trial court granted summary judgment in favor of the firm, finding that no duty was
owed. We affirm the trial court’s judgment.
FACTUAL SUMMARY
            ESS College of Business, Inc. was a for-profit business college located in Dallas, Texas and
directed by Jan V. Friedheim. The College trained students to work as secretaries, paralegals, and
administrative assistants. Most of the students received financial aid through federal programs
which were administered by the Department of Education (DOE). In fiscal years 1999 and 2000, the
DOE imposed the Ninety Percent Rule, which prohibited the College from deriving more than
90 percent of its revenue from federal funding.
            Although the College received federal funding for its programs, it also borrowed money from
various lenders in 1998, 1999, and 2000. On November 5, 1998, it incurred the maximum credit line
of $950,000 from Chase Bank of Texas, whose predecessor was Texas Commerce Bank (Chase). 
In March 1999, Abrams Centre National Bank (Abrams) replaced Chase as the lender for the 1998
debt. The $950,000 debt was rolled into a new seven-year term loan of $1,000,000 which was
guaranteed by the Small Business Administration. Abrams also provided the College with a
$300,000 credit line on April 22, 1999. The $300,000 credit line was renewed on April 22, 2000 and
again on September 29, 2000. At that point, the credit line was increased by $200,000. On
January 22, 2001, Abrams loaned an additional $250,000. All of the promissory notes were
guaranteed by Jan V. Friedheim and her husband and secured by liens on personal property which
primarily consisted of the College’s accounts receivable for funds due under federal educational
programs for student loans. 
            The College hired Farmer, Fuqua & Huff, P.C. as an independent auditor. Farmer audited
the College at fiscal year end in 1998, 1999, and 2000. The audits were performed in compliance
with DOE requirements. The College informed Farmer that copies of the audit would be sent to
Chase as required by their line of credit. 
            Following an open audit by the DOE in July 2000 indicating a high default rate on Perkins
loans, the College was placed on provisional certification. When a school is placed on provisional
certification, the DOE can take action without allowing for due process. The College never notified
Abrams that it had been placed on provisional certification. The DOE placed the school on
“reimbursement status” in December 2000 for failure to comply with the Ninety Percent Rule. 
While on reimbursement status, the College could only obtain Title IV reimbursement by submitting
complex documentation every thirty days showing what funds had been earned during the prior
period. As a consequence, the school suffered an adverse affect on its cash flow. ESS sought
additional funds from Abrams and it agreed to the two-month short term loan of $250,000 in January
2001. 
            On March 27, 2001, the DOE revoked the school’s provisional certification to participate in
Title IV programs. ESS ceased operations, defaulted on all three loans to Abrams, and filed for
bankruptcy. Because all of the loans were guaranteed by the Friedheims, Abrams filed suit against
both of them. Abrams obtained a judgment for $1,600,000. This judgment remains unsatisfied. 
            Abrams then filed suit against the accounting firm for negligent misrepresentation, claiming
Abrams had relied on the financial status of the school as reflected in the audits when it loaned
money to ESS. Farmer moved for summary judgment, contending that Abrams failed to establish
that the firm knew Abrams would receive and use the audits in deciding whether to make the loans. 
Farmer relied upon the Restatement (Second) of Torts, contending that Texas follows Section 552
without reservation. Abrams responded that there was genuine issue of material fact as to whether
the firm should have known its reports would be relied upon by Abrams. The trial court granted
summary judgment with regard to the January 2001 loan because the evidence established as a matter
of law that Abrams had not justifiably relied on the audit report. In denying summary judgment as
to the March 1999 and the September 2000 loans, the trial court determined that the Restatement was
inconsistent with Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co., 715 S.W.2d 408, 412 (Tex.App.--Dallas 1986, writ ref’d n.r.e.). In Blue Bell, the Dallas Court of Appeals held accountants are liable
to third parties under the Restatement if the accountant knew or should have known they would
receive information. Farmer unsuccessfully argued that Blue Bell was overruled by the Texas
Supreme Court’s decision in McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991
S.W.2d 787, 788 (Tex. 1999). It then filed an interlocutory appeal to the Dallas Court of Appeals
pursuant to Tex.Civ.Prac.&Rem.Code Ann. § 51.014(d)(Vernon Supp.2004-05). The court denied
the application.


 Farmer then filed a motion for reconsideration of the partial denial of summary
judgment in the trial court. This motion was based upon Compass Bank v. King, Griffin & Adamson,
P.C., 388 F.3d 504 (5th Cir. 2004) and Tara Capital Partners I, L.P. v. Deloitte & Touche, L.L.P.,
No. 05-03-00746-CV, 2004 WL 1119947 (Tex.App.--Dallas May 20, 2004). The trial court entered
a final summary judgment on February 9, 2005.
STANDARD OF REVIEW
             In a traditional summary judgment proceeding, the standard of review on appeal is whether
the successful movant at the trial level carried the burden of showing that there is no genuine issue
of material fact and that judgment should be granted as a matter of law. Lear Siegler, Inc. v. Perez,
819 S.W.2d 470, 471 (Tex. 1991); Duran v. Furr’s Supermarkets, Inc., 921 S.W.2d 778, 784
(Tex.App.--El Paso 1996, writ denied). Thus, the question on appeal is not whether the summary
judgment proof raises fact issues as to required elements of the movant’s cause or claim, but whether
the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material
fact as to one or more elements of the movant’s cause or claim. Gibbs v. General Motors Corp., 450
S.W.2d 827, 828 (Tex. 1970); Duran, 921 S.W.2d at 784. In resolving these issues, all evidence
favorable to the non-movant must be taken as true and all reasonable inferences, including any
doubts, must be resolved in the non-movant’s favor. Nixon v. Mr. Property Mgmt. Co., Inc., 690
S.W.2d 546, 548-49 (Tex. 1985); Duran, 921 S.W.2d at 784. A trial court properly grants summary
judgment in favor of a defendant if that party conclusively establishes all elements of an affirmative
defense, or conclusively negates at least one element of the plaintiff’s claim. American Tobacco Co.,
Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). Issues not expressly presented to the trial court
by written motion or response to the motion for summary judgment cannot be considered as grounds
for reversal. Tex.R.Civ.P. 166(a); McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341
(Tex. 1993). We may only consider the record as it existed at the time of the motion and may not
consider sua sponte grounds for reversing the judgment. San Jacinto River Authority v. Duke, 783
S.W.2d 209, 210 (Tex. 1990), citing Central Education Agency v. Burke, 711 S.W.2d 7, 9 (Tex.
1986). 
FOR WHOM THE BLUE BELL TOLLS
            At issue is whether Blue Bell remains viable or whether it has been implicitly overruled. In
its first and second points of error, Abrams contends the trial court erred in granting summary
judgment because Blue Bell was not expressly overruled by McCamish, and, based on Blue Bell, an
accountant can be held liable for negligent misrepresentation only to those non-clients he knew or
should have known would receive the information. The parties agree that Section 552 applies. 
Abrams argues that Texas imposes a forseeablility standard in determining accountant liability to
non-clients. Farmer counters that Texas has adopted an actual knowledge standard.
The Restatement
Section 552 of the Restatement provides:
(1) One who, in the course of his business, profession or employment, or in any other
transaction in which he has a pecuniary interest, supplies false information for the
guidance of others in their business transactions, is subject to liability for pecuniary
loss caused to them by their justifiable reliance upon the information, if he fails to
exercise reasonable care or competence in obtaining or communicating the
information.
 
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited
to loss suffered 
 
(a) by the person or one of a limited group of persons for whose benefit and
guidance he intends to supply the information or knows that the recipient
intends to supply it; and
 
(b) through reliance upon it in a transaction that he intends the information
to influence or knows that the recipient so intends or in a substantially similar
transaction.
 
(3) The liability of one who is under public duty to give the information extends to
loss suffered by any of the class of persons for whose benefit the duty is created, in
any of the transactions in which it is intended to protect them. 

Restatement (Second) of Torts § 552 (1977). The purpose for the rule is found in Comment a:
When the harm that is caused is only pecuniary loss, the courts have found it
necessary to adopt a more restricted rule of liability, because of the extent to which
misinformation may be, and may be expected to be, circulated, and the magnitude of
the losses which may follow from reliance upon it. 
 
* * * * *
[I]t does not follow that every user of commercial information may hold every maker
to a duty of care. Unlike the duty of honesty, the duty of care to be observed in
supplying information for use in commercial transactions implies an undertaking to
observe a relative standard, which may be defined only in terms of the use to which
the information will be put, weighed against the magnitude and probability of loss
that might attend that use if the information proves to be incorrect. 

* * * * *
 
[O]ne who relies upon information in connection with a commercial transaction may
reasonably expect to hold the maker to a duty of care only in circumstances in which
the maker was manifestly aware of the use to which the information was to be put
and intended to supply it for that purpose. [Emphasis added].

* * * * *
 
By limiting the liability for negligence of a supplier of information to be used in
commercial transactions to cases in which he manifests an intent to supply the
information for the sort of use in which the plaintiff’s loss occurs, the law promotes
the important social policy of encouraging the flow of commercial information upon
which the operation of the economy rests.

Restatement (Second) of Torts § 552 cmt.a (1977). In other words, the Restatement requires
knowledge and intent by the provider of the information because the provider needs to assess the risk
of loss that may be attributed to the receiver if the information is incorrect.
Blue Bell
            Blue Bell was a clothing manufacturer located in North Carolina. Blue Bell, 715 S.W.2d at 
410. In 1972, the company began extending credit to Myers Department Stores, a Texas corporation
based in Arlington (Meyers Texas). Id. In 1980, Meyers Texas and an affiliated company, Meyers
Department Stores of Forth Worth, Inc. (Meyers Fort Worth), were acquired by a newly formed
Delaware corporation, Meyers Department Stores, Inc. (Meyers Delaware). Id. Shortly thereafter,
Meyers Delaware hired Peat-Marwick to audit all of Meyers’ financial records. Id. On June 3, 1981,
Peat-Marwick issued to Meyers Delaware a consolidated balance sheet with combined financial
statements of all three companies. Id. Several days later, it made a minor revision to the financial
statements and forwarded the revisions to Meyers Delaware. Id. Per Meyers Delaware’s request,
Peat-Marwick made seventy-five copies of the revised reports rather than the twenty-five copies it
had made of the original. Id.
            Meyers Delaware provided to Blue Bell a copy of the original report and the revised financial
statement. Id. Blue Bell relied upon the statements when it considered extending a substantial
amount of credit to Meyers Texas. Id. On November 4, 1982, Meyers Texas filed for bankruptcy. 
Id. As a result, Blue Bell recovered only a portion of the outstanding balance due. Id. Blue Bell
sued Peat-Marwick alleging four causes of action, including negligent misrepresentation. Id. at 410. 
Summary judgment was granted in favor of Peat-Marwick. Id. On appeal, Blue Bell contended that
the accounting firm had failed to conclusively establish it did not owe a legal duty to them. Id. at
411. In reversing, the Dallas Court of Appeals concluded that a fact issue existed as to whether Blue
Bell fell within Section 552(2)’s “limited class.” Id. at 412.
            The court’s analysis discussed the depth of Section 552 and its application to accountants.
Noting that other jurisdictions had adopted a foreseeability test, the court declined to adopt such a
broad standard.


 Id. at 412. Limiting liability to those third persons who an accountant specifically
knew would rely on the information was “too artificial a distinction.” Id. at 412. Instead, the court
adopted a “less restrictive interpretation of section 552.” Id. 
To allow liability to turn on the fortuitous occurrence that the accountant’s client
specifically mentions a person or class of persons who are to receive the reports,
when the accountant may have that same knowledge as a matter of business practice,
is too tenuous a distinction for us to adopt as a rule of law. Instead, we hold that if,
under current business practices and the circumstances of that case, an accountant
preparing audited financial statements knows or should know that such statements
will be relied upon by a limited class of person, the accountant may be liable for
injuries to members of that class relying on his certification of the audited reports. 
[Emphasis in original].

Id. at 412.
McCamish
            In McCamish, the Supreme Court determined whether a law firm representing a financial
institution owed a duty to non-clients for the tort of negligent misrepresentation. McCamish, 991
S.W.2d at 788. The non-clients sued the law firm, claiming the firm negligently misrepresented that
the financial institution’s board of directors had approved a settlement agreement. Id. at 790. The
firm filed a motion for summary judgment, alleging that it did not owe a duty to third parties because
there was no privity. Id. The trial court granted the motion, but the court of appeals reversed,
holding that even absent privity, an attorney may owe a duty to avoid negligent misrepresentation
to a third party. Id. The Supreme Court then examined whether privity was required under
Section 552 in order for a non-client to sue an attorney.
            First, the Court decided that Section 552 applies to attorneys. Id. It then explained that
Section 552 imposes a duty to avoid negligent misrepresentation absent privity because the claim
is not equivalent to a legal malpractice claim. Id. at 792. 
Under the tort of negligent misrepresentation, liability is not based on the breach of
duty a professional owes his or her clients or others in privity, but on an independent
duty to the nonclient based on the professional’s manifest awareness of the
nonclient’s reliance on the misrepresentation and the professional’s intention that the
nonclient so rely. 

Id. at 792. Although an attorney may be subject to liability for negligent misrepresentation under
Section 552(1), liability is limited by Section 552(2) to those:
[S]ituations in which the attorney who provides the information is aware of the
nonclient and intends that the nonclient rely on the information. In other words, a
section 552 cause of action is available only when information is transferred by an
attorney to a known party for a known purpose. 

Id. at 794. By this language, the Court wholly adopted Section 552. And in analyzing whether
Section 552 applied to attorneys, the Court cited several opinions which had applied Section 552 to
other professionals, including accountants. Id. at 791, citing Steiner v. Southmark Corp., 734
F.Supp. 269, 279-80 (N.D.Tex. 1990); Blue Bell v. Peat, Marwick, Mitchell & Co., 715 S.W.2d 408,
411-12 (Tex.App.--Dallas 1986, writ ref’d n.r.e.); Shatterproof Glass Corp. v. James, 466 S.W.2d
873, 880 (Tex.Civ.App.--Fort Worth 1971, writ ref’d n.r.e.). We conclude that Sections 552(1) and
(2) apply to a wide range of professionals, including accountants.
            Because McCamish wholly adopted Section 552, it implicitly overruled Blue Bell. This is
true for two reasons: (1) the language of the Restatement is contrary to Blue Bell’s holding, and (2)
the duty articulated in Section 552 requires that a defendant have actual knowledge of a third party’s
reliance upon the information in issue. 
Tara
            Following McCamish, the Dallas Court of Appeals recognized the Restatement’s requirement
of actual knowledge. Tara Capital Partners I, L.P. v. Deloitte & Touche, L.L.P., 2004 WL 1119947
(Tex.App.--Dallas 2004, pet. denied). Tara purchased Just for Feet, Inc. stock based on the
company’s financial statements and quarterly reports. Id. at *1. Deloitte prepared the audits for Just
for Feet. Id. Shortly after Tara purchased the stock, Just for Feet filed for bankruptcy and Tara filed
suit against Deloitte for negligent misrepresentation. Id. Summary judgment was granted in favor
of Deloitte. Id. 
            The appellate court held that Section 552(2) limits a defendant’s liability to situations in
which “the information supplier is aware of the third party and intends that the third party rely on
the information.” Id. at *2. The court found nothing to indicate that Deloitte intended or knew Just
for Feet intended to utilize its work for the purpose of attracting investors. Id. at *3. Thus, the court
recognized that Section 552 imposes an actual knowledge requirement. Because we agree with this
assessment, we overrule Points of Error One and Two.



IS THERE A FACT QUESTION?
            Having established that Section 552 requires a supplier of information to know to whom the
information will be supplied, we turn now to the commentary which establishes two classes of
plaintiffs. The first is a plaintiff who is specifically identified by the supplier to be the intended
receiver. The second is a plaintiff who although not specifically mentioned by name belongs to a
specified group or class the supplier knows will receive the information. The commentary also
requires a defendant to procure the information for the guidance of both classes. A defendant must
have the specific purpose of providing information to either a known plaintiff or a known group of
plaintiffs before a duty is owed. Farmer argues it conclusively established that it did not know
Abrams would receive the audits nor did it intend for Abrams to rely on the audited information in
loaning money to ESS. In Point of Error Three, Abrams contends a fact issue exists as to whether
it fell within a class of known recipients.
            Two illustrations in the Restatement demonstrate these principles: 
Illustration 5
A is negotiating with X Bank for a credit of $50,000. The Bank requires an audit by
independent public accountants. A employs B & Company, a firm of accountants,
to make the audit, telling them that the purpose of the audit is to meet the
requirements of X Bank in connection with a credit of $50,000. B & Company agrees
to make the audit, with the express understanding that it is for transmission to X
Bank only. X Bank fails, and A, without any further communication with B &
Company, submits its financial statements accompanied by B & Company’s opinion
to Y Bank, which in reliance upon it extends a credit of $50,000 to A. The audit is
so carelessly made as to result in an unqualified favorable opinion on financial
statements that materially misstates the financial position of A, and in consequence
Y Bank suffers pecuniary loss through its extension of credit. B & Company is not
liable to Y Bank. [Emphasis added].
Illustration 6
The same facts as in Illustration 5, except that nothing is said about supplying the
information for the guidance of X Bank only, and A merely informs B & Company
that he expects to negotiate a bank loan, for $50,000, requires the audit for the
purpose of the loan, and has X Bank in mind. B & Company is subject to liability to
Y Bank. [Emphasis added].

Abrams contends the facts here are similar to Illustration 6. It argues Farmer knew the audit was
being formulated for the general purpose of obtaining a bank loan. It fell within the class of lenders
Farmer knew the College intended to supply with the audits. Farmer also knew that ESS had to
provide its audited information to Chase Bank as a requirement of the credit line and that once ESS
changed lenders, the new lender would be receiving and relying upon the audited reports. 
            On the other hand, Farmer suggests Illustration 5 is more closely analogous. Farmer was
hired by ESS to provide audits for the Department of Education. The purpose of the audits was
explicitly stated in each of the compliance letters: “This report is intended for the information of
management and the U.S. Department of Education. However, this report is a matter of public record
and its distribution is not limited.” This caveat is not surprising. The purpose of providing
compliance letters to the DOE was to establish that no more than 90 percent of the College’s funding
came from federal programs. The remaining 10 percent had to come from another source. Indeed,
the funds came from a credit line. The 1998 audit was provided for a specific party--Chase Bank--in
order to comply with the credit line terms. Ted Munselle was the accountant in charge of the 1998
audit. His affidavit explained that Chase would use the financial statements and audits only in
connection with the existing credit line. William Huff was in charge of the 1999 and 2000 audits
and had knowledge of the 1998 audit. In his affidavit, he maintained that Farmer knew ESS had a
revolving credit line with Chase Bank but the firm did not know that ESS intended to give a copy
of its reports to Abrams in order to secure replacement or extensions of existing loans. Huff also
stated that had the firm known Abrams would be relying on the reports, Farmer would have charged
more to compensate for the additional risk of liability. Audits conducted for purposes of
governmental agencies involve less risk. If problems arise, there generally are no repercussions since
the risk is shifted to the client. Munselle, Huff, and Friedheim all insisted that ESS never informed
Farmer of its intent to give the audits to Abrams or to any bank other than Chase.
            While Farmer undoubtedly owed a duty to Chase, it owed no duty to Abrams. The summary
judgment evidence conclusively established there was no genuine issue of material fact as to whether
Abrams fell within the two recognized classes of plaintiffs. We overrule Point of Error Three. Our
resolution obviates the necessity of addressing the fourth and final point regarding justifiable
reliance. We affirm the judgment of the court below.


October 27, 2005                                                         
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.