NYCAL CORPORATION vs. KPMG PEAT MARWICK LLP.

Suffolk. December 1, 1997. - January 16, 1998.

Present: WILKINS, C.J., LYNCH, GREANEY, FRIED, & IRELAND, JJ.

*Accountant. Actionable Tort. Negligence,* Accountant, Standard of care.

This court considered the scope of negligence liability of an accountant to
persons with whom the accountant is not in privity, rejected the foresee-
ability test and the near-privity test [493-495], and concluded that the test
contained in § 552 of the Restatement (Second) of Torts (1977), describ-
ing the tort of negligent misrepresentation, comports most closely with the
liability standard applied in this State in other professional contexts
[495-496].

Discussion of the tort of negligent misrepresentation set forth in § 552 of the
Restatement (Second) of Torts (1977), as it would be applicable to the
conduct of an accountant supplying information for the guidance of others.
[496-499]

In an action brought by an investor against the accounting firm that gave
advice to the company in which the plaintiff wished to invest, the
undisputed facts failed to show that the defendant knew or intended that
the plaintiff, or any group of which the plaintiff was a member, would rely
on its audit report in connection with any decision to invest in the company;
the judge correctly applied the liability standard embodied in § 552 of the
Restatement (Second) of Torts (1977) and granted summary judgment for
the defendant. [499-500]

CIVIL ACTION commenced in the Superior Court Department on
May 23, 1994.

The case was heard by *Martha B. Sosman,* J., on a motion
for summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

*Jeffrey E. Glen,* of New York, *& Leonard M. Davidson* for
the plaintiff.

*Arnold P. Messing (Donald W. Rose,* of New York, *& Lisa F.
Wallack* with him) for the defendant.

GREANEY, J. On May 24, 1991, the plaintiff, allegedly in reli-
ance on an auditors' report of the 1990 financial statements of

Gulf Resources & Chemical Corporation (Gulf) prepared by the defendant, entered into a stock purchase agreement with the controlling shareholders of Gulf and, on July 12, 1991, the sale was completed. Gulf filed for bankruptcy protection in October, 1993, rendering the plaintiff's investment worthless. The plaintiff filed a civil complaint against the defendant seeking damages and costs incurred as a result of its alleged reliance on the auditors' report. The plaintiff claimed that the report materially misrepresented the financial condition of Gulf,[1] and should have included a "going concern" qualification. After applying the liability standard embodied in § 552 of the Restatement (Second) of Torts (1977), a judge in the Superior Court granted summary judgment for the defendant.[2] We granted the parties' applications for direct appellate review of the final judgment. We conclude that the defendant did not breach any legal duty owed to the plaintiff and, accordingly, we affirm the judgment.

1. The following material facts are undisputed. Gulf retained the defendant to audit its 1990 financial statements. At that time, Gulf was listed on the New York Stock Exchange, and was controlled by several of its officers and directors who held their Gulf shares through two other entities (Inoco P.L.C. and Downshire N.V.). The financial statements were prepared by, and were the responsibility of, Gulf's management.

In February, 1990, D.S. Kennedy & Co. (Kennedy) reported to the Securities and Exchange Commission (SEC) that it had acquired 2,033,600 shares of Gulf common stock, and that it intended to acquire a controlling interest in Gulf. The defendant was aware of Kennedy's SEC filing. Gulf's controlling shareholders responded to the filing by increasing Inoco P.L.C.'s holdings in Gulf through purchasing and exercising warrants. Gulf management discussed with the defendant the potential for purchasing Kennedy's shares. Thus, the defendant was aware of

---

[1] The plaintiff asserted that the report failed to take into account recurring substantial losses from operations, the extent of liability for environmental clean-up costs, inadequate accruals of pension and retirement obligations, and restrictions on transfers in certain bank covenants.

[2] A judge earlier had denied the defendant's motion to dismiss, in which the defendant had argued that the near-privity rule, discussed infra, applied to this case. The judge ruled that the principles stated in Restatement (Second) of Torts § 552 (1977) applied, and granted the plaintiff a period of discovery to determine whether sufficient evidence existed to support a claim under § 552. At the conclusion of the discovery period, the defendant filed this motion for summary judgment.

Kennedy's interest in acquiring a controlling interest in Gulf and that Gulf intended to treat Kennedy as a hostile takeover threat.

The minutes of a September 14, 1990, meeting of Gulf's board of directors (board) reflect that the board discussed a possible sale to Aviva Petroleum, Inc. (Aviva). The minutes of an October 4, 1990, meeting indicate that the board discussed acquiring a 17% interest in Aviva, and adoption of a "poison pill" to defend against a hostile takeover by Aviva. Gulf ultimately purchased Aviva stock. The defendant reviewed the minutes from the board's meetings in preparing the audit report, and was aware of Gulf's purchase of Aviva stock.

The defendant's completed auditors' report was included in Gulf's 1990 annual report, which became publicly available on February 22, 1991. In March, 1991, the plaintiff entered into discussions with Gulf concerning the possible purchase of a large block of Gulf shares, and during the course of those discussions, Gulf provided the plaintiff with a copy of its 1990 annual report. Thereafter, the plaintiff purchased 3,626,775 shares of Gulf (approximately 35% of the outstanding shares) in exchange for $16,000,000 in cash and $18,000,000 in the plaintiff's stock. The acquisition gave the plaintiff operating control of Gulf.

The defendant first learned of the transaction between the plaintiff and Gulf a few days prior to the July 12, 1991, closing. Until that time, the defendant did not know that any transaction between the plaintiff and Gulf had been contemplated.

2. We have not addressed the scope of liability of an accountant to persons with whom the accountant is not in privity. Three tests have generally been applied in other jurisdictions, either by common law or by statute, to determine the duty of care owed by accountants to nonclients. These include the foreseeability test, the near-privity test, and the test contained in § 552 of the Restatement.

The plaintiff urges our adoption of the broad standard of liability encompassed in the foreseeability test. Pursuant to this test, which is derived from traditional tort law concepts as first enunciated in *Palsgraf* v. *Long Island R.R.*, 248 N.Y. 339, 344 (1928), an accountant may be held liable to any person whom the accountant could reasonably have foreseen would obtain and rely on the accountant's opinion, including known and unknown investors. See, e.g., *H. Rosenblum, Inc.* v. *Adler*, 93

N.J. 324 (1983).[3] This test is generally disfavored, having been adopted by courts in only two jurisdictions. See *Touche Ross & Co.* v. *Commercial Union Ins. Co.*, 514 So. 2d 315 (Miss. 1987); *Citizens State Bank* v. *Timms, Schmidt & Co.*, 113 Wis. 2d 376 (1983).

Our cases draw a distinction between the duty owed by a professional to a third party for personal injuries and that owed to a third party for pecuniary loss due to a professional's negligence. While we apply traditional tort law principles in cases involving the former, we have not done so in cases concerning the latter. Such principles are particularly unsuitable for application to accountants where, "regardless of the efforts of the auditor, the client retains effective primary control of the financial reporting process." *Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370, 400 (1992). The auditor prepares its report from statements and information supplied by the client, and once the report is completed and provided to the client, the client controls its dissemination. If we were to apply a foreseeability standard in these circumstances, "a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares Corp.* v. *Touche*, 255 N.Y. 170, 179 (1931). We refuse to hold accountants susceptible to such expansive liability, and conclude that Massachusetts law does not protect every reasonably foreseeable user of an inaccurate audit report.

The near-privity test, which originated in Chief Judge Cardozo's decision in *Ultramares Corp.* v. *Touche*, *supra*, and was modified by *Credit Alliance Corp* v. *Arthur Andersen & Co.*, 65 N.Y.2d 536, 553 (1985), limits an accountant's liability exposure to those with whom the accountant is in privity or in a relationship "sufficiently approaching privity." Under this test, an accountant may be held liable to noncontractual third parties who rely to their detriment on an inaccurate financial report if the accountant was aware that the report was to be used for a particular purpose, in the furtherance of which a known party (or parties) was intended to rely, and if there was some conduct on the part of the accountant creating a link to that party, which evinces the accountant's understanding of the party's reliance. *Id.* at 551.

---

[3]This decision has been overruled by statute. See N.J. Stat. Ann. § 2A:53A-25 (West Supp. 1997) (setting forth a near-privity standard).

The defendant professes that the near-privity test is consistent with the standard we have previously applied to other professionals in the absence of privity. We disagree. A review of the relevant cases demonstrates that the first two elements of the near-privity test — reliance by the third party and knowledge that the party intended to rely — have analogs in our case law, but the third element — conduct by the accountant providing a direct linkage to the third party — does not.

The leading case in Massachusetts on the duty owed by a professional to persons with whom the professional is not in privity is *Craig* v. *Everett M. Brooks Co.*, 351 Mass. 497 (1967). In *Craig*, the plaintiff, a general contractor, and the defendant, a civil engineer and surveyor, each had a contract with the same real estate developer. The defendant placed stakes on the developer's real estate to enable the plaintiff to build roads. *Id.* at 498-499. The defendant knew that the plaintiff was the contractor, and that the work which the plaintiff was contracted to perform would be in accordance with the defendant's stakes. *Id.* Because the defendant knew the plaintiff's identity, and the precise purpose for which the work was to be performed, as well as that the plaintiff would be relying on the work, we held that there would be recovery despite the lack of a contractual relation. *Id.* at 501. The rule in *Craig* has been referred to as "the *Craig* principle of foreseeable reliance," *Page* v. *Frazier*, 388 Mass. 55, 65 (1983), and subsequent cases rely on *Craig* for the proposition that recovery for negligent misrepresentation is limited to situations where the defendant knew that a particular plaintiff would rely on the defendant's services. See, e.g., *Flattery* v. *Gregory*, 397 Mass. 143, 147 (1986); *Page* v. *Frazier, supra* at 64-65; *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 193 (1982); *Anthony* v. *Vaughan*, 356 Mass. 673, 674-675 (1970).[4]

We believe that the third test, taken from § 552 of the

---

[4]The plaintiff relies on *Parent* v. *Stone & Webster Eng'g Corp.*, 408 Mass. 108 (1990), and *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187 (1982), to argue that we have applied the foreseeability doctrine in cases involving the duty of care owed to third parties by various professionals. The plaintiff's reliance on *Parent* is misplaced because that case was solely a negligence case involving personal injuries suffered by the plaintiff, and therefore governed by the foreseeability standards of traditional tort law. The plaintiff also reads too broadly the foreseeability language employed in our decision in *Rae, supra* at 193 ("if the plaintiff's harm was the foreseeable result of [the defendant's] negligence, the plaintiff has established a cause of action in negligence"). This language

Restatement (Second) of Torts (1977), comports most closely with the liability standard we have applied in other professional contexts. Section 552 describes the tort of negligent misrepresentation committed in the process of supplying information for the guidance of others as follows: .

> "(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

That liability is limited to

> "loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."

*Id.*

The attendant comments explain the policy behind § 552 as follows:

> "[T]he duty of care to be observed in supplying information for use in commercial transactions implies an undertaking to observe a relative standard, which may be defined only in terms of the use to which the information will be put, weighed against the magnitude and probability of loss that might attend that use if the information proves to be incorrect. A user of commercial information cannot

was subsequently clarified in *Page* v. *Frazier*, 388 Mass. 55, 64 (1983), where we quoted *Rae* for the principle that, under *Craig* v. *Everett M. Brooks Co.*, 351 Mass. 497 (1967), a defendant must have actual knowledge of a plaintiff's reliance in order to state a claim against it. Moreover, *Rae* concerned the frequently occurring issue of an insurance broker's or agent's negligence in failing to procure an insurance policy for a potential insured. In this special category of cases, we have followed the general rule to permit a potential insured to recover in tort for the negligence.

reasonably expect its maker to have undertaken to satisfy this obligation unless the terms of the obligation were known to him. Rather, one who relies upon information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care only in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose."

*Id.* comment a, at 128.

The comments explain with regard to the requirement that the plaintiff be a member of a "limited group of persons for whose benefit and guidance" the information is supplied as follows:

"[I]t is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it . . . . It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given. It is not enough that the maker merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated."

*Id.* comment h, at 132-133.

We concur with the California Supreme Court's conclusion in *Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370, 394 (1992), that the Restatement test properly balances the indeterminate liability of the foreseeability test and the restrictiveness of the near-privity rule. Section 552 "recognizes commercial realities by avoiding both unlimited and uncertain liability for economic losses in cases of professional mistake and exoneration of the auditor in situations where it clearly intended to undertake the responsibil-

ity of influencing particular business transactions involving third persons." *Id.* at 408.

Although the Restatement standard has been widely adopted by other jurisdictions, courts differ in their interpretations of the standard. The better reasoned decisions interpret § 552 as limiting the potential liability of an accountant to noncontractual third parties who can demonstrate "actual knowledge on the part of accountants of the limited — though unnamed — group of potential [third parties] that will rely upon the [report], as well as actual knowledge of the particular financial transaction that such information is designed to influence." *First Nat'l Bank of Commerce* v. *Monco Agency Inc.*, 911 F.2d 1053, 1062 (5th Cir. 1990). See *Industrial Indem. Co.* v. *Touche Ross & Co.*, 13 Cal. App. 4th 1086, 1095 (1993). The accountant's knowledge is to be measured "at the moment the audit [report] is published, not by the foreseeable path of harm envisioned by [litigants] years following an unfortunate business decision." *First Nat'l Bank of Commerce* v. *Monco Agency Inc.*, *supra* at 1059. See *Bethlehem Steel Corp.* v. *Ernst & Whinney*, 822 S.W.2d 592, 594 (Tenn. 1991).[5]

The plaintiff argues that, by limiting § 552 to allow recovery only by those persons, or limited group of persons, that an accountant actually knows will receive and rely on an audit report, we will be rewarding an accountant's efforts to "remain blissfully unaware" of the report's proposed distribution and uses. We are unpersuaded by this argument. The axiom we have applied in other contexts applies to accountants as well: the Restatement standard will not excuse an accountant's "wilful

---

[5]We reject the plaintiff's argument that § 552 encompasses the foreseeability doctrine of traditional tort law, and we decline to adopt the broad construction some courts have given to § 552 as the plaintiff requests. See, e.g., *Simpson* v. *Specialty Retail Concepts, Inc.*, 908 F. Supp. 323 (M.D.N.C. 1995); *Blue Bell, Inc.* v. *Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408 (Tex. Ct. App. 1986). These cases apply such an expansive interpretation to § 552 that they effectively eliminate all of the restrictions that the Restatement sought to impose.

The plaintiff also relies on *Fullmer* v. *Wohlfeiler & Beck*, 905 F.2d 1394 (10th Cir. 1990) (applying Utah law), and *Merit Ins. Co.* v. *Colao*, 603 F.2d 654 (7th Cir. 1979), cert. denied, 445 U.S. 929 (1980) (applying Illinois law), in support of its broad interpretation of § 552. Neither case discusses § 552, nor analyzes the limitations on an accountant's liability under that standard. Furthermore, both cases have been overruled by legislative adoption of the near-privity rule. See Utah Code Ann. § 58-26-12 (1996); Ill. Ann. Stat. c. 225, § 450/30.1 (Smith-Hurd 1993).

ignorance" of information of which the accountant would have been aware had the accountant not consciously disregarded that information. See generally *West's Case,* 313 Mass. 146, 150-151 (1943). See also *Van Christo Advertising, Inc.* v. *M/A-COM/LCS, ante* 410, 417 (1998).

3. The judge correctly concluded under § 552 that the undisputed facts failed to show that the defendant knew (or intended) that the plaintiff, or any limited group of which the plaintiff was a member, would rely on the audit report in connection with an investment in Gulf. To the contrary, the record suggests that the defendant did not prepare the audit report for the plaintiff's benefit and that the plaintiff was not a member of any "limited group of persons" for whose benefit the report was prepared. At the time the audit was being prepared, the plaintiff was an unknown, unidentified potential future investor in Gulf. The defendant was not aware of the existence of the transaction between the plaintiff and Gulf until after the stock purchase agreement had been signed and only a few days before the sale was completed.

The summary judgment record further indicates that the defendant neither intended to influence the transaction entered into by the plaintiff and Gulf nor knew that Gulf intended to influence the transaction by use of the audit report. While the defendant was aware of the circumstances surrounding the Kennedy and Aviva transactions, which had occurred prior to the completion of the audit report, the plaintiff's purchase of Gulf stock did not resemble either of those transactions, and it occurred subsequent to the issuance of the defendant's report. Furthermore, contrary to the plaintiff's contention, the Kennedy and Aviva transactions did not indicate to the defendant that Gulf's controlling shareholders intended to use the audit report to locate a purchaser for their stock. In fact, the record reveals that at the time the report was being prepared, Gulf's controlling shareholders were responding to expressions of interest in acquiring their stock by aggressively rejecting those advances and taking actions to defend against a hostile takeover.

Moreover, the record suggests that the defendant's audit report was prepared for inclusion in Gulf's annual report and not for the purpose of assisting Gulf's controlling shareholders in any particular transaction. The record does not exhibit that the defendant knew of any particular use that would be made of its audit report. Cf. *Guenther* v. *Cooper Life Sciences, Inc.,* 759

F. Supp. 1437, 1443 (N.D. Cal. 1990) (accountants knew that audit report would be placed in prospectus for public offering and had expressly consented to its inclusion). "Under the Restatement rule, an auditor retained to conduct an annual audit and to furnish an opinion for no particular purpose generally undertakes no duty to third parties." *Bily* v. *Arthur Young & Co., supra* at 393.[6]

The rule we adopt today will preclude accountants from having to ensure the commercial decisions of nonclients where, as here, the accountants did not know that their work product would be relied on by the plaintiff in making its investment decision.

*Judgment affirmed.*

---

[6]We also note that the plaintiff had had the opportunity to conduct more detailed due diligence prior to its purchase of the Gulf shares, although it apparently did not do so. In addition, although the plaintiff asserts reliance on the defendant's report as the basis for making its investment in Gulf, such decisions typically involve other factors. See *Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370, 401 (1992).