Connolly, J.
Plaintiffs Howard, Amalia, Galite, Kenneth, and Talia Reisman (the “Reismans”) and a related company, Anigata Holdings Ltd. (“Anigata,” collectively the “plaintiffs”), are suing KPMG Peat Marwick L.L.P. (“KPMG”) under G.L.c. 93A (1997 ed.) (Count I), common law fraud (Count II), and negligent misrepresentation (Count III).
Plaintiffs claim that KPMG is liable for generating, supplying, issuing and actively participating in the issuance of fraudulent and misleading financial state *352 ments. which it supplied to the plaintiffs with knowledge of their falsity and with knowledge that the plaintiffs would rely upon them.
KPMG has now filed a motion for summary judgment pursuant to Mass.R.Civ.P. 56 as to all the Counts. As grounds thereof, KPMG argues that the alleged misrepresentation cannot be shown to have proximately caused any loss, KPMG did not owe the plaintiffs any duty on which a claim for negligent misrepresentation can be established, some of the plaintiffs cannot succeed on fraud or negligent misrepresentation claims because they did not rely on the alleged misrepresentations, and KPMG’s business relationship to the plaintiffs was too attenuated to support a G.L.c. 93A claim.
For the reasons set forth below, defendant’s motion for summary judgment is ALLOWED as to all Counts.
BACKGROUND
The following are the undisputed material facts. Defendant KPMG is a national accounting firm with an office in Boston, Massachusetts. Among other services, KPMG provides accounting services. The Reismans consist of a family which include Howard (father), Amalia (mother), Kenneth, Galite and Talia (children). Plaintiff Anigata is a Canadian holding company whose stock is owned by Howard Reisman.
The Reismans and Anigata owned all of the common stock of Varnet Software Corporation (“Varnet”). Var-net is a Canadian company established in 1973 by Howard Reisman. Howard Reisman was the chief executive and principal shareholder of Varnet.[2]
In the spring of 1993, the Reismans[3] were seeking to sell some or all of their interest in Varnet. Marcam Corporation (“Marcam”)[4] was identified as a potential purchaser of their Varnet stock. KPMG served as the independent certified public accountants for Marcam. At all relevant times to this lawsuit, KPMG served as the accounting firm responsible for preparing Marcam’s financial statements. KPMG audited the financial statements prepared by Marcam for fiscal years 1991 and 1992. At the time KPMG issued its audit opinions on Marcam’s 1991 and 1992 annual financial statements, Marcam had not yet been identified as a potential purchaser of the Varnet shares.
KPMG also reviewed the 1993 quarterly financial statements prepared by Marcam.[5] KPMG never audited any of these quarterly financial statements and issued no audit reports, opinions or other statements in connection with them. KPMG did not provide copies of any of Marcam’s financial statements (annual or quarterly) to the Reismans or to anyone at Varnet.
KPMG was never engaged to perform any services in connection with the Marcam transaction, and Var-net was not looking to KPMG for any advice relating to the substance, business aspects, or structure of that transaction.
Marcam valued the price of all the shares of Varnet at approximately $23 million. On May 17, 1993, after reviewing Marcam's 1991, 1992, and first quarter 1993 financial reports issued by KPMG, plaintiffs signed a letter of intent to exchange their shares in Varnet for $23 million worth of Marcam’s restricted stock.
On or about June 18, 1993, the Reismans sold their Varnet shares to Marcam. The Reismans received 885,000 shares of Marcam as consideration for the Varnet shares (“Varnet Transaction”).[6] As a condition of the Varnet Transaction, the Reismans agreed not to sell their Marcam stock for several months thereafter.
On October 22, 1993, Marcam claimed that the Reismans breached certain representations and warranties. Marcam gave the Reismans notice of a claim against them for indemnification pursuant to the Securities Purchase Agreement which effected the Var-net Transaction. In an attempt to resolve their differences, the parties executed a Settlement Agreement (the “Agreement”) dated December 21, 1993. The Reismans paid Marcam $730,000 to settle the claim and released any claims they may have had against Marcam.[7]
Between June 1993, when the Reismans consummated the stock swap transaction with Marcam, and December 1993, when the Reismans sold their holdings in Marcam, Marcam’s stock had dropped sixteen points. The Marcam shares, which were not registered stock, were sold in a Regulation S sale to foreign investors at $7.75 per share, realizing collectively approximately $6,858,732. The closing market price on the NASDAQ for Marcam shares on the day the Reismans sold their shares was $9.25.
In August 1994, almost eight months after the Reismans sold their Marcam shares, Marcam disclosed that it had restated its 1991 and 1992 annual financial statements and its 1993 quarterly report. Marcam restated these financial statements to consolidate losses of its European subsidiaries during these time periods and to account for the February 1993 MAPICS transaction as an acquisition of the MAPICS software itself rather than an acquisition of the marketing rights to such software.[8] The revised financial statements for Marcam showed losses for the fiscal years 1991-1993 period.[9]
DISCUSSION
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226, 232 (1997). A moving party which does not bear the burden of proof at trial is entitled to summary judgment if it submits affirmative evidence, unmet by countervailing materials, that either negates an essential element of the nonmoving party’s case or demonstrates that the nonmoving party has no reasonable expectation of proving an essential element of its case. *353 Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Plaintiffs claim that after reviewing and relying upon Marcam’s 1991, 1992. and first quarter 1993 financial reports issued by KPMG. they signed a letter of intent to exchange their shares in Varnet for $23 million worth of Marcam's restricted stock. One month later, after reviewing Marcam’s second quarter 10-Q report, filed in May 1993, the plaintiffs completed the stock swap transaction with Marcam. Plaintiffs contend that they lost $14,000,000 as a direct result of defendant’s false statements. Had Marcam's true financial position been accurately and honestly reported by defendant, plaintiffs aver that the 1991, 1992, and 1993 statements would have demonstrated that Marcam was in poor financial condition.
The Reismans claim that KPMG is liable under three theories: G.L.c. 93A, negligent misrepresentation, and common law fraud. These Counts are discussed below.
I. G.L.c. 93A (Count I)
The Reismans claim that KPMG violated G.L.c. 93A by issuing false financial statements. In order to succeed on a 93A claim the Reismans must prove that KPMG engaged in unfair methods of competition, or unfair or deceptive acts or practices in the conduct of any trade or commerce to the Reismans’ damage. G.L.c. 93A, §2. Plaintiffs contend that the material misrepresentations and omissions in the financial statements constitute unfair and deceptive acts or practices within the meaning of G.L.c. 93A, §2. KPMG argues that the Reismans’ 93A claim fails as a matter of law because KPMG’s relationship to the Reismans and the events at issue were too remote to give rise to liability under G.L.c. 93A. This Court agrees with this assessment.
Sections 9 and 11 of G.L.c. 93A provide the only two causes of action under the statute. Section 9 provides a cause of action to “(a]ny person, other than a person entitled to bring an action under section eleven of this chapter.”[10] G.L.c. 93A, §9. Section 9 applies to “an individual who participates in commercial transactions on a private, nonprofessional basis.” Shawmut Community Bank N.A. v. Zagami, 411 Mass. 807, 814 (1992), quoting Lantner v. Carson, 374 Mass. 606, 610 (1978). By contrast, section 11 applies to “(a]ny person who engages in the conduct of any trade or commerce. ” G.L.c. 93A, §11.
“(Section 11 ] requires that there be a commercial transaction between a person engaged in trade or commerce with another person engaged in trade or commerce.” Additionally, the individuals must have been “acting in a ‘business context.’ ” Szalla v. Locke, 421 Mass. 448, 451-52 (1995). The Reismans’ sale of their company to Marcam is a commercial transaction which occurred in a business context. See O’Neil v. Sciaba Construction Co., Civil No. 9225, 2 Mass. L. Rptr. 297 (Super.Ct. May 16, 1994) (“the disposal of a business asset . . . [is] a transaction that occur[s] in trade or commerce”). The Reismans also engaged in “trade or commerce” by selling their Varnet shares to Marcam. Therefore, since the Varnet Transaction is a business transaction, the Reismans’ G.L.c. 93A claim must be brought under section 11.[11]
For 93A claims, privity of contract is not required. G.L.c. 93A created “broad new rights, forbidding conduct not previously unlawful under common law contract and tort or under any prior statutes.” Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 78 (1977) (citations omitted). However, to maintain an action under G.L.c. 93A where there is no privity of contract, the parties must be “engaged in more than a minor or insignificant business relationship.” Standard Register Co. v. Bolton-Emerson, Inc., 38 Mass.App.Ct. 545, 551 (1995), citing Mongeau v. Boutelle, 10 Mass.App.Ct. 246, 247-48 (1980); John Boyd Co. v. Boston Gas Co., 775 F.Sup. 435, 440 (D.Mass. 1991) (the existence of some contractual or business relationship between the parties is a precursor to liability under Chapter 93A).
KPMG merely served as Marcam’s independent auditor and assisted Marcam as requested in its acquisition of Varnet. There is nothing in the record indicating the existence of a direct relationship between the Reismans and KPMG. Accordingly, since there was no contractual or business relationship between KPMG and the Reismans, their 93A claim must fail as a matter of law.
II. Common Law Fraud (Count II)
The Reismans argue that KPMG is liable to them under the tort of common law fraud. To establish a cause of action for fraud, plaintiffs must show “that the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing [plaintiffs] to act thereon, and that the [plaintiffs] relied upon the representation as true and acted upon it to his damage.” Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982) (citations omitted). This Count fails as a matter of law for two reasons.
First, the undisputed material facts do not demonstrate that the defendant’s alleged false representation was made for the purpose of inducing plaintiffs to act. There are no facts establishing that KPMG knew that the Reismans were relying on KPMG’s opinions regarding Marcam’s financial statements. The Reismans did not identify Marcam as a potential purchaser of Varnet until 1993, after its 1991 and 1992 audit opinions were already issued. KPMG could not have had knowledge that the 1991 and 1992 financial statements were being relied on by the plaintiffs in the Varnet Transaction. Therefore, the alleged false representation could not have been made for the purpose of inducing plaintiffs to rely on them.
*354 Nor can the Reismans establish a fraud claim with respect to the 1993 10-Q’s. KPMG rendered no opinion as to Marcam’s 10-Q's. Unlike Marcam’s annual financial statements, the 10-Q’s contain no signature, opinion, representation or statement whatsoever by KPMG. In fact, the 10-Q’s state that the accompanying financial statements were “unaudited” by KPMG and were prepared by Marcam. Therefore, KPMG did not opine in the presentation of the quarterly financial statements.
Second,-the Reismans cannot prove that KPMG’s alleged misrepresentations proximately caused their losses. The Reismans must demonstrate that the value of their Marcam shares would not have declined if KPMG had represented the facts accurately. Therefore, plaintiffs must produce evidence that KPMG’s alleged misrepresentations proximately caused the value of their Marcam shares to decline. In re Biogen Sec. Litig., 179 F.R.D. 25, 39 (D.Mass. 1991).
Plaintiffs claim that the Marcam shares were artificially inflated due to Marcam’s falsely reported financial results. Although the Reismans may be able to show that they suffered a loss when their Marcam shares declined in value between June and December 1993, they cannot connect that loss with any alleged misrepresentations.
The restatement of Marcam’s 1991 and 1992 annual financial statements and its 1993 quarterly financial statements was not publicly revealed until August 1994— almost eight months after the Reismans sold their Marcam shares. If the information was not disclosed prior to the plaintiffs selling their shares, it could not have affected the sale price of the stock. Therefore, the restatement could not have adversely affected the value of the Reismans’ Marcam shares because they already had sold their shares by the time the restatement was disclosed to the public. The decline in the shares from the time plaintiffs purchased them could have been the result of other market factors.
Accordingly, since the Reismans cannot prove the essential elements of fraud — that defendant’s false representation was made for the purpose of inducing plaintiffs and that defendant’s actions were the cause of their loss — plaintiffs fraud claim fails as a matter of law.
III. Negligent Misrepresentation (Count III)
The Reismans claim that KPMG is liable for negligent misrepresentation by means of supplying the misleading financial statements. In order to recover for negligent misrepresentation the Reismans must prove that KPMG, in the course of its business, supplied false information for the guidance of the Reismans, in their business transactions, causing pecuniary loss, by their justifiable reliance upon the information, and with failure to exercise reasonable care or competence in obtaining or communicating the information. Fox v. F & J Gatozzi Corp., 41 Mass.App.Ct. 581, 587-88 (1996).
For an accountant to be liable to a third party, there must be privity of contract between the parties or the test set forth in the Restatement (Second) of Torts, §552 (the “Restatement”) must be met.[12] Nycal Corp. v. KPMG Peat Marwick, L.L.P. 426 Mass. 491, 495-96 (1998). Both parties agree that there was no privity of contract between them. Therefore, when an accountant is not in privity of contract with a third party,[13] as in this case, their scope of liability for negligent misrepresentation is determined by the test contained in the Restatement. Nycal Corp., 426 Mass. at 495-96.
In order for a third party to have standing to recover against an independent auditor, the Restatement requires that the auditor, at the moment the audit report was published, First Nat’l Bank of Commerce v. Monco Agency, Inc., 911 F.2d 1053, 1059-60 (5th Cir. 1990), had actual knowledge of the particular third party’s reliance on its audit opinions and actual knowledge that its opinions would impact the particular financial transactions.[14] Harbor Ins. Co. v. Essman, 918 F.2d 734, 738 (8th Cir. 1990).
Nycal Corporation interprets the Restatement as limiting the potential liability of an accountant to noncontractual third parties who can demonstrate “actual knowledge on the part of accountants of the limited — though unnamed — group of potential [third parties] that will rely upon the [report], as well as actual knowledge of the particular financial transaction that such information is designed to influence.” Nycal Corp., 426 Mass. at 498, quoting First Nat’l Bank of Commerce v. Monco Agency Inc., 911 F.2d 1053, 1062 (5th Cir. 1990).
Applying this test to the case at hand, the Reismans cannot establish that KPMG owed them a duty with respect to Marcam’s audited annual financial statements and unaudited quarterly financial statements. There are no facts to support a finding that KPMG knew the Reismans were relying on KPMG’s opinions regarding Marcam’s financial statements. Nor are there facts establishing that KPMG had actual knowledge of the Reismans’ reliance at the moment its audit report was published, or, that KPMG knew its audit opinions would be used later in connection with the Varnet Transaction.
The Reismans did not identify Marcam as a potential purchaser of Varnet until 1993, after its 1991 and 1992 audit opinions were already issued. Therefore, KPMG could not have had actual knowledge at the time the reports were issued that the plaintiffs would rely on them in the Varnet Transaction.
Nor can the Reismans establish a negligent misrepresentation claim with respect to the 1993 10-Q’s. KPMG rendered no opinion relative to Marcam’s 10-Q’s. Unlike Marcam’s annual financial statements, the 10-Q’s contain no signature, opinion, representation or statement whatsoever by KPMG. The 10-Q’s, signed by David C. Cairns, Marcam’s Chief Financial Officer, state that the accompanying financial statements *355 were “unaudited” by KPMG and were prepared by Marcam.[15] Absent some statement by KPMG, there was nothing KPMG did upon which plaintiffs could have relied to their detriment.
Plaintiffs claim that defendant should nonetheless be held liable because KPMG instructed Marcam on howto report the financial transactions, and it reviewed, edited and helped prepare the information reported in the 10-Q. However, this is not enough. See In re Kendall Square Research Corp. Sec. Litig., 868 F.Sup. 26, 28 (D.Mass. 1994) (review and approval of quarterly financial statements by an accounting firm does not constitute the making of a material misstatement).
Accordingly, since the Reismans cannot show that KPMG owed it a duty, its negligent misrepresentation claim fails as a matter of law.
ORDER
For the foregoing reasons, it is ORDERED that defendant’s motion for summary judgment is ALLOWED as to all three Counts.

His wife and children had no decision making role in the business and they had non-voting stock.

Howard Reisman acted on behalf of Anigata and the other members of his family.

Marcam develops and sells application software products to manufacturing companies for business planning and control. Marcam is a public company headquartered in Newton, Massachusetts, whose stock is traded on the NASDAQ System Stock Exchange.

KPMG instructed Marcam on how to report the financial transactions, and it reviewed, edited and helped prepare the information reported in the 10-Q.

In deciding to sell their Varnet share to Marcam, Amafia, Galite and Tafia relied on the recommendation of their father Howard.

The release states in material part:
. . . [the Reisman Group] hereby fully and forever releases and discharges . . . Marcam . . . from any and all claims, debts, damages, liability, demands, actions, causes of action, suits, agreements, loans, and rights of action, of whatever kind and nature, both in law and in equity [the Reisman Group] . . . now have, ever had, or may hereafter have, whether matured or unmatured, known or unknown, asserted or unasserted, liquidated or unliqui-dated, arising out of, relating to or resulting in any manner from any agreement, business relationship, transaction, or acts between the Marcam Parties and [the Reisman Group] that occurred prior to the date hereof . . .

In 1991, Marcam invested and took control of its European distributors in Italy, Belgium, and the Netherlands. The plaintiffs allege that KPMG falsely reported that the distributors were not subsidiaries and failed to include the sales and net losses of the European distributors in Marcam's financial statements. Additionally, plaintiffs allege that KPMG reported that Marcam was only acquiring the exclusive worldwide marketing rights to the MAPICS product fine, rather than the software itself.

Prior to December 20, 1993, when the Reismans sold their shares, there was no public disclosure or other information concerning Marcam’s accounting for its European distributors or its transaction involving MAPICS.

Therefore, if you are entitled to bring a 93A claim under section 11 of the Act, you cannot bring a claim under section 9.

Plaintiffs appear to concede that summary judgment would be appropriate on a G.L.c. 93A claim brought under section 11 of the Act. However, they argue that summary judgment would not be appropriate if brought under section 9 of the Act.

 According to the Restatement,
|o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information if he fails to exercise reasonable care or competence in obtaining or communicating the information.
Restatement (Second) of Torts, §552.

Plaintiffs acknowledge the absence of direct privity, but assert that they have satisfied the requirements for third-party standing under the Restatement.

The liability stated in the Restatement is limited to loss suffered
“(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it hi a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."
Restatement (Second) of Torts, §552.

“The accompanying unaudited consolidated financial statements have been prepared by the Company ... In the opinion of the Company, these consolidated financial statements . . . present fairly the consolidated financial position of Marcam Corporation ...”