Kirpalam, Maynard M., J.
This action arises out of the development, renovation, and construction between 2004 and 2008 of the five building residential condominium project known as the Wakefield Crossing Condominium located in Wakefield, MA (the “Project”). Wakefield Crossing, LLC (“Wakefield Crossing”) was the declarant of the Project and Symes Associates (“Symes”) was the general contractor. VMY Vitols Architects, Inc. (“VMY Vitols”) provided professional architectural services on the Project and V. Victor Vitols (“Vitols”) (collectively, the “Vitols defendants”) was the principal of VMY Vitols at all relevant times during the Project. The plaintiffs, as Trustees of the Wakefield Crossing Condominium Trust (the “Trust”), filed claims for negligence against VMY Vitols and Vitols (Count IX), breach of contract based on a third-party beneficiary theory against VMY Vitols (Count X),[3] and negligent misrepresentation against VMY Vitols and Vitols (Count XI). The matter is before the court on the Motion for Summary Judgment of Vitols and VMY Vitols. For the reasons stated below, the Motion for Summary Judgment is ALLOWED in part and DENIED in part.
BACKGROUND
VMY Vitols entered into two “Standard Form[s] of Agreement Between Owner and Architect for Housing Services,” one with Wakefield Crossing on August 4, 2004 and one with Symes on August 11, 2005 (the “Agreements”). Section 2.5.5 of both agreements provides that VMY Vitols shall
visit the site at intervals appropriate to the stage of construction (or as otherwise agreed by the Architect in writing) to become generally familiar with the progress and quality of the Work and to determine in general if the Work when completed will be in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of on-site observations as an architect, the Architect shall keep the Owner informed of the progress and quality of the Work, and shall endeavor to guard the Owner against defects and deficiencies in the Work. (More extensive site representation maybe agreed to as an Additional Service, as described in Section 3.2).
Section 2.5.6 of both agreements states that
(t]he Architect shall not have control over, charge of, or responsibility for Construction means, methods, techniques, sequences or procedures ... since these are solely the Contractor’s responsibility under the Contract for Construction. The Architect shall not be responsible for the Contractor’s schedule or failure to carry out the Work in accordance with the Contract Documents. The Architect shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons performing any of the Work.
Throughout the course of the Project, the Vitols defendants sent “Construction Control Affidavits” and *288 “Final Construction Control Affidavits” to Symes who submitted them to the Town of Wakefield Building Inspector. In the “Construction Control Affidavits” Vitols certified that he
prepared or directly supervised the preparation of all design plans, computations and specifications concerning . . . Architectural ... for the above named project and that, to the best of my knowledge, such plans, computations and specifications meet the applicable provisions of the Massachusetts State Building Code, all acceptable engineering practices and applicable law and ordinances for the proposed use and occupancy.
Vitols further certified that he
shall perform the necessary professional services and be present on the construction site as required to determine that the work is proceeding in accordance with the documents approved for the Building Permit... I SHALL SUBMIT PERIODICALLY A PROGRESS REPORT TOGETHER WITH PERTINENT COMMENTS TO THE BUILDING INSPECTOR FOR WAKEFIELD, MA. UPON COMPLETION OF THE WORK, I SHALL SUBMIT A FINAL REPORTAS TO THE SATISFACTORY COMPLETION AND READINESS OF THE PROJECT FOR OCCUPANCY.
The “Final Construction Control Affidavits" contained identical language except for the following:
I [Vitols] further certify that I have performed the necessary professional services and be [sic] present on the construction site as required to determine that the work has proceeded in accordance with the documents approved for the Building Permit ... I HAVE SUBMITTED PERIODIC PROGRESS REPORTS TOGETHER WITH PERTINENT COMMENTS TO THE BUILDING INSPECTOR. THE BUILDING APPEARS COMPLETE AND IN ACCORDANCE WITH THE CONSTRUCTION DOCUMENTS.
The Trust filed this action seeking to recover damages related to “certain widespread deficiencies in the design and construction” of the Project.
DISCUSSION
Summary judgment shall be granted when all material facts have been established and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Miller v. Mooney, 431 Mass. 57, 60 (2000). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing parly’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17. Summary judgment will be denied if there are genuine issues of material fact. Golub v. Milpo, Inc., 402 Mass. 397, 400 (1988).
I. Negligence
A. Economic Loss Doctrine
The Vitols defendants argue that the Trust’s negligence claim is barred by the economic loss doctrine. Pursuant to the economic loss doctrine, purely economic losses are unrecoverable in tort actions in the absence of personal injury or property damage. FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993). See Garweth Corp. v. Boston Edison Co., 415 Mass. 303, 305 (1993) (“The traditional economic loss rule provides that, when a defendant interferes with a contract or economic opportunity due to negligence and causes no harm to either the person or property of the plaintiff, the plaintiff may not recover for purely economic losses”); cf. Commonwealth v. Johnson Insulation, 425 Mass. 650, 653 (1997) (instead, contractual remedies must be pursued). Economic loss includes “damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits without any claim of personal injury or damage to other property.” Berish v. Bornstein, 437 Mass. 252, 267 (2002). The economic loss doctrine applies to claims of negligent design and installation in newly constructed homes. See id. at 268.
The Trust has submitted the affidavit of Tim Little, P.E. (“Little”) in support of its opposition to the Motion for Summary Judgment. Little identifies defects in the following areas of the Project: fiber cement siding, entrance towers, window bays, masonry, veneer masonry flashing, window opening flashings, and vents in masonry walls. Little opines that all of these defects are partly attributable to inadequate design details on the architectural drawings. According to Little, certain of the defects have caused damage in individual units and common areas.[4]
The court concludes that the Trust has alleged and proffered sufficient evidence at this stage that defects in the design plans and specifications have caused damage to common areas, individual units, and personal property. These alleged losses are not barred by the economic loss doctrine. See id. (suggesting that water damage to individual units would constitute sufficient properly damage to avoid application of the economic loss doctrine); Aldrich v. Add, Inc., 437 Mass. 213, 223 (2002) (holding that summary judgment could not enter in architect’s favor on ground that plaintiffs claim was barred by economic loss doctrine because plaintiff alleged that architect’s negligence caused physical harm to common areas). But see Sebago, Inc. v. Beazer East, Inc., 18 F.Sup.2d 70, 94-95 (D.Mass. 1998) (defining relevant product as the *289 entire building and holding that physical damage to tenants’ property was damage to “relevant product,” not damage to “other property”).
B. Construction Oversight
The Vitols defendants contend that insofar as the Trust’s negligence claim is based on their alleged negligence in overseeing the construction,[5] they are entitled to summary judgment because they were not responsible for construction oversight. The Agreements, however, provide for some construction oversight by the Vitols defendants. Specifically, Section 2.5.5 of the Agreements states that the Vitols defendants owed a duiy to visit the Project at appropriate intervals to become familiar with the progress and quality of the work and to determine “in general if the Work when completed will be in accordance with the Contract Documents.” Informed by these site visits, the Vitols defendants were to keep Wakefield Crossing or Symes informed “of the progress and quality of the Work, and shall endeavor to guard the Owner against defects and deficiencies in the Work.” See LeBlanc v. Logan Hilton Joint Venture, No. SJC-11008 (Sup.Jud.Ct. Aug. 20, 2012), slip op. at 17-18. Whether the Vitols Defendants breached these duties is a genuine issue of material fact for trial.[6]
II. Negligent Misrepresentation
To recover for negligent misrepresentation a plaintiff must prove that the defendant “(1) in the course of his business, (2) supplies false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information.” Nota Constr. Corp. v. Keyes Associates, Inc., 45 Mass.App.Ct. 15, 19-20 (1998).
In support of its claim, the Trust relies on the Construction Control Affidavits signed by the Vitols defendants and submitted by Symes to the Town of Wakefield Building Inspector. The Trust contends that without these affidavits, the Building Inspector would not have issued Certificates of Use & Occupancy, upon which the owners of the units at the Project relied when purchasing their units.[7]
Liability can be imposed for the negligent furnishing of services to one not a party to the contract where the defendant knows that the party will rely on his services. Id. at 21, citing Craig v. Everett M. Brooks Co., 351 Mass. 497, 501 (1967). The allegedly negligent party, however, must have “actual knowledge” of the plaintiffs reliance on its services. Meridian at Windchime, Inc. v. Earth Tech, Inc., 81 Mass.App.Ct. 128, 133 (2012), citing Nycal Corp. v. KPMG Peat Marwick LLP, 426 Mass. 491, 495 n.4 (1998). The court determines that the Trust has not presented any evidence that the Vitols defendants had actual knowledge that buyers of the condominium units would rely on its services, particularly considering that there is no evidence that the buyers of the condominium units knew of any representations by the Vitols defendants when they bought their units or that the Building Inspector for the Town of Wakefield actually relied on the Construction Control Affidavits in issuing the Certificates of Use & Occupancy. See §552 of the Restatement (Second) of Torts (1977) comment h, at 133 (“It is not enough that the maker merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated”). The court concludes that the connection the Trust is attempting to make, i.e., that without the Construction Control Affidavits from the Vitols defendants, the Building Inspector would not have issued Certificates of Use & Occupancy, upon which the owners of the units at the Project relied when purchasing their units, is too tenuous. At most, the Trust might be able to show that the Building Inspector relied on the Construction Control Affidavits and that the Trust plaintiffs relied on the Certificates of Use & Occupancy, but not that the Trust plaintiffs relied on the Construction Control Affidavits. Thus, summary judgment is granted for the Vitols defendants as to the Trust’s negligent misrepresentation claim.
ORDER
For the reasons discussed above, it is hereby ORDERED that the Motion for Summary Judgment of V. Victor Vitols and VMY Vitols Architects, Inc. be ALLOWED as to Counts X and XI and DENIED as to Count IX.

 The Trust conceded at oral argument that it was not an intended beneficiary of the contract between Symes and VMY Vitols. Thus, the Motion for Summary Judgment ofVitols and VMY Vitols is allowed as to Count X.

 For example, with respect to the window opening flashings, Little states that “ls]ignificant water infiltration has occurred around window openings in wall areas covered with fiber cement siding and trim on Buildings #2, #3, #4, and #5, resulting in damage to building interiors, including the Building 3 Common Area and Units 228, 343, 411, 421, and 515. These damages include water damage to wall trim and paint, water damage to unit flooring requiring replacement of the flooring, water damage to unit walls requiring repair, water damage to ceilings and ceiling paint requiring repairs.”

 In its complaint, the Trust alleges that the Vitols defendants “were responsible under the contract with Wakefield Crossing to supervise the renovation and construction of.. . the Condominium buildings and the common areas and facilities appurtenant to ensure that said structures and improvements conformed to the plans and specifications submitted to and approved by the applicable municipal agencies and boards.”

 In addition, the Vitols defendants’ certification In the Construction Control Affidavits submitted by Symes to the Town of Wakefield Building Inspector that VMY Vitols "per *290 formed the necessary professional services and [has] be[en] present on the construction site as required to determine that the work has proceeded in accordance with the documents approved for the Building Permit” creates a genuine issue of material fact regarding whether the Vitols defendants assumed oversight duties outside of the Agreements.

 The Trust submitted the affidavits of two owners of units at the Project who stated that in electing to purchase their unit, they relied upon the fact that the construction of the Project had been performed in accordance with all approved project plans and requirements of the Massachusetts State Building Code and all applicable regulations, as purportedly reflected in the issuance of a certificate of occupancy for the Project and that they would not have purchased the unit has there been no certificate of occupancy.